**EDWARDS, Plaintiff-Appellee, v. BENEDICT, ET, Defendants-Appellants.**

Ohio Appeals, Second District, Franklin County.

No. 3912.   Decided October 31, 1946.

Rodney B. Baldwin, Columbus, Warren E. Insley, Columbus, for Plaintiff-Appellee.

Burr, Porter, Stanley & Treffinger, Lawrence D. Stanley and Bruce G. Lynn of Counsel, Columbus, for Defendants-Appellants.

## OPINION

By MILLER, J.

This is an appeal on questions of law from the Court of Common Pleas of Franklin County, Ohio. The action was one for damages as a result of injuries sustained in an automobile accident which occurred on the 6th day of December, 1944, between a Chevrolet truck traveling in a westerly direction on Oak Street and a Plymouth coupe being operated in an easterly direction on Oak Street by Harry Fisher, Jr., an employee of the defendants-appellants. The action is based on two theories:

(1) That Harry Fisher, Jr., was in the employ of the appellants and that he was acting within the scope of his employment at the time of the accident;

the other theory being that,

(2) The defendants-appellants entrusted an automobile to said Harry Fisher, Jr., when they knew or by the exercise

of ordinary care should have known that said Fisher was so inexperienced and so incompetent that it rendered said car a dangerous instrumentality in his hands.

At the conclusion of the plaintiff's case and also at the close of the case a motion was made by the defendants for an instructed verdict. The Court found, however, that there was substantial evidence on both issues and overruled both motions. The jury returned a verdict of $8000.00 in favor of the plaintiff-appellee.

The assignments of error may be epitomized by two questions:

(1) Was Harry Fisher acting within the scope of his employment at the time of the accident?

(2) Did the defendants entrust an automobile to one whom they knew or should have known to be so incompetent, inexperienced or so reckless as to render it a dangerous instrumentality?

The record discloses that Capital Street is a public street in the City of Columbus, running in an easterly and westerly direction between East Broad Street and Oak Street; that the defendants-appellants have a garage on the north side of Capital Street and across the street on the south side they own and operate a body shop. Approximately 160 feet east of the garage and on Capital Street is a parking lot on which the defendants park cars during the day and at night, and when needed, these cars are driven to the garage and body shop. Harry Fisher, Jr., was employed by the defendants on or about the 12th day of September, 1944, to work in the body shop, but part of his duties consisted in driving cars from the parking lot to the shop. On the day of the injury Harry Fisher was instructed to drive the Plymouth automobile to the shop, but was not given definite instructions as to the route he was to pursue. Instead of taking a direct westerly course he drove in an easterly direction intending to cover several blocks and then return to Capital Street, passing in front of the lot from which he had taken the car and then driving westerly to the garage. While he was traveling in an easterly direction and approximately one and one-half blocks from the parking lot he made a left hand turn directly in front of the plaintiff's car, resulting in the injuries compained of.

It was conceded during the argument by counsel for the defendants that Harry Fisher was negligent in the operation of the car.

The record discloses that the two cars came together on the north side of Oak Street which runs in an easterly and

westerly direction, at a point approximately twelve feet west of its intersection with Washington Avenue. The plaintiff contends that the manner in which Harry Fisher made his turn as described, before reaching the intersection, showed clearly that the Plymouth car was being operated by a person grossly inexperienced and incapable. At the time of Harry Fisher's employment by the defendants-appellants in September, 1944, he was sixteen years of age. He had no driver's license and had driven a car about twelve times on short trips while accompanied by his father. He was not questioned at this time as to whether or not he had a driver's license or had ever driven a car before. Sometime before the injury, however, the defendants did learn that Fisher had no driver's license.

It is claimed by the appellants that Harry Fisher at the time and place of the accident was not acting within the scope of the employer's business as a matter of law, and that the Court erred in submitting the question to the jury. The Court held that there was not such a divergence from his regular duties that the very character of relationship of master and servant was severed, and therefore it was a proper question to submit to the jury.

In discussing this question it seems feasible to look to the basic authority of Harry Fisher and to the acts which he had been performing for his employers during the entire course of his employment. One of his jobs was to drive cars from the lot in question to the body shop and he was so instructed on the date of the accident. He had no specific instructions as to the route he should take or the manner in which he should operate the car. The appellants contend that Fisher was authorized to drive the car only in Capital Street since the garage was only 160 feet due west on Capital Street. The record does not show that Fisher was ever given any instructions as to the course he was to follow. The plaintiff contends that on the day of the injury Harry Fisher had the option of selecting his route and that he was fully within the scope of his employer's business even though he selected the longer route. The record discloses that Harry Fisher was on no mission of his own at the time of the accident. He stated that his only purpose was to return the car to the garage. He did admit that he took the course he did for his own pleasure.

The principle of law here involved is well settled and not disputed by counsel. Its application to the evidence is the problem. It is claimed here on behalf of the defendants that the driver of the car had so far deviated from the path of his

employment as to render inapplicable the doctrine of respondeat superior. Our attention has been called to 4 O. Jur. 716, Sec. 110, which says:

"Although a servant or employee may previously be serving his principal if he deviates from the path of his employment his employer is not liable for negligence occurring during the deviation. Thus, where a servant or employee directed to deliver an automobile at a certain destination appropriates the car to his own use and devotes it to his own purposes exclusively by taking a ride for his own pleasure, he is engaged in his own exclusive enterprise. By thus stepping aside from his master's business, to serve his own purposes, the relation of master and servant existing is suspended and no liability for the servant's act committed during the period when he turned aside from his master's business attaches to the latter."

The same subject is also treated in 26 O. Jur., p. 639, which provides:

"To sever the servant from his master's employment, it is necessary that the act performed be such a divergence from his regular duties that its very character severs the relationship of master and servant. An immaterial deviation, made by a servant in the performance of his duties, will not relieve his master from liability for his negligence. Thus, a truck driver who is permitted to take the truck home and leave it in his back.yard over Sunday does not so deviate from the scope of his authority as to free his master from liability where he leaves the truck standing along the curb of the street without lights while he walks to the store to procure lights for it."

The above law was cited and followed by the Supreme Court of Ohio in the case of **Amstutz, Admr., Appellee, v Prudential Insurance Company of America, Appellant, 166 Oh St 404**. We quote from the opinion on **page 409**:

"An immaterial deviation by a servant will not, as a matter of law, be deemed to be an abandonment of his services to his employer, unless such deviation is so divergent 'from his regular duties that its very character severs the relationship of master and servant.' 26 O. Jur., 639, Sec. 619."

The same principle of law is stated in Amer. Jur., Vol. 5, page 5, Section 376:

"While, as stated in the preceding section, the owner of an automobile is not liable for injuries or damages caused by the negligent operation of his automobile while it is being used by an employee for his own business or pleasure, the servant must have abandoned and turned aside completely from the master's business, to engage in some purpose wholly his own, before the master ceases to be liable for his act; it is not every deviation from the direct line of his duties on the part of an employee that constitutes a turning aside from, and an abandonment of, his master's business. A slight deviation by the servant in charge of a motor vehicle, for his own purposes, when he is on business for his master, does not affect the liability of the master for an injury resulting from the negligent operation of the automobile by the servant. This rule that a slight deviation will not take the servant out of the master's business so as to relieve the latter from liability for injuries and damage caused during such deviation has been applied in a great variety of situations. **The fact that the employe may, to serve some purpose of his own, deviate a few blocks out of his way or choose a different way back, even though it is not the most direct route, does not, as a matter of law, constitute an abandonment of the master's work."** (Emphasis ours.)

Our attention has been called to the case of **Bauman v Sincavich, 137 Oh St 23,** but we do not believe the facts in the case are applicable to the case at bar. Here the employee deviated his course of travel two and two-tenths miles in order to go on a mission for two young men he had picked up on the highway. Soon after he had completed this mission and turned to go home the accident occurred. The Court held that the submission of the case to the jury was unwarranted. However, in the case at bar the driver of defendant's car testified, and it was not denied, that his motive at all times was to deliver the car to the garage. As a matter of fact this same course had been taken by him and another employee on numerous occasions. His deviation of the several blocks was made in order to derive more pleasure from the task at hand.

A general rule in passing upon the defendant's motion for a directed verdict is that the trial court must treat as true all the evidence, together with any and all inferences which the jury may reasonably draw therefrom in favor of the plaintiff and if after so treating the evidence the Court should find that reasonable minds may reach different conclusions as to any question of fact essential to the claim of the party against whom the motion was made, the motion should be

denied and the case submitted to the jury. See **Hamden Lodge v Ohio Fuel Gas Co., 127 Oh St 469; Amstutz, Admr., v Prudential Ins. Co., 136 Oh St 408.**

We are also referred to a Restatement of Agency, Section 237:

"If, having in mind either his master's business and his own, or only his master's business, the servant departs too far from the space or time limits, he no longer acts within the scope of employment. The same rule applies to re-entering the employment. He cannot re-enter it, however much he desires it until he is within the flexible limits of employment."

The record discloses that Harry Fisher was never more than approximately one and one-half blocks from his destination and had he completed his trip he at no time would have been any further away. Measured in feet he would have been approximately 600 feet from the parking lot at the furthest point. Under this rule we believe that it would still have been a jury question to determine whether or not he was within the flexible limits of his employment. In the light of the record we are of the opinion the Court did not err in submitting this question to the jury.

The next question presented is whether or not there was sufficient evidence in the record showing that the defendant was negligent in entrusting an automobile to one whom he knew or should have known to be incompetent, inexperienced and so reckless as to make it a dangerous instrumentality. On this subject we find a recent case decided July 25, 1945, being **Williamson v Motor Lines, Inc., 145 Oh St 467,** syllabi **1 and 3** of which are as follows:

"1. A motor vehicle is not an inherently dangerous instrumentality, and an owner thereof is not generally liable for its negligent operation by another to whom it is entrusted to be used, or when it is in fact used for the other's own purpose. Liability may arise, however, where an owner permits the operation of his motor vehicle by one who is so lacking in competency and skill as to convert it into a dangerous instrumentality."

"3. To give rise to such liability, it is essential that it be shown by competent evidence that the owner had knowledge of the driver's incompetence, inexperience or reckless tendency as an operator, or that the owner, in the exercise of ordinary

care, should have known thereof from facts and circumstances with which he was acquainted."

Also, in 5 Amer. Jur. page 696:

"An owner who lends his automobile to another, knowing that the latter is an incompetent, reckless, or careless driver, is liable for such person's negligence; the owner's liability in such cases is based upon his own negligence in intrusting the automobile to such a person. Intrusting the car to a minor child known to be a reckless and incompetent driver, or to one forbidden to operate a car, **or to an unlicensed driver, constitutes an act of negligence for which the owner is liable.**" (Emphasis ours.)

Now, what information did the defendants have as to Harry Fisher's competency as a driver prior to the alleged injury? They knew that he was a boy sixteen years of age and that he had only a temporary driver's license which permitted him to drive an automobile only when accompanied by a licensed operator who was actually occupying a seat beside the driver. It should have known all of these facts concerning Harry Fisher's experience as a driver which would have been inquired into by an ordinarily prudent person in the exercise of ordinary care under the same or similar circumstances. What the defendants should have known from all the facts and circumstances is a factual question which only the jury can determine.

From this record we cannot say as a matter of law that Harry Fisher was a qualified, competent and experienced driver at the time of the accident. This is a question on which reasonable minds might differ, and which should therefore be for the determination of the jury under proper instructions. We recognize that our ruling on the first epitomized assignment of error presents a very close question and should we be in error on this proposition we feel that there would be no change in results under the two issue rule as announced in the case of **Sites v Haverstick**, et al., 23 Oh St 626.

We find no error in the record and the judgment is affirmed.

HORNBECK, PJ, and WISEMAN, J, concur.