404 P.2d 333

**Ray J. GRIESER, Plaintiff-Appellant,**
**v.**
**E. R. HAYNES, Defendant-Respondent.**
**No. 9512.**

Supreme Court of Idaho.
July 22, 1965.

Felton & Bielenberg, Moscow, for appellant.

J. Henry Felton, Lewiston, for respondent.

**200**

TAYLOR, Justice.

Plaintiff (appellant) brought this action to recover an alleged balance of wages due, a penalty of 30 days additional wages pursuant to I.C. § 45–606, and for attorney's fees pursuant to I.C. § 45–605. The cause was tried to the court sitting without a jury.

At the close of plaintiff's evidence, defendant moved the court for a judgment of nonsuit, as follows:

"Comes now the defendant, the plaintiff having rested, and moves for a judgment of non-suit for the following reasons: there has been no contract pleaded or proven between the persons; there has been no proof of the amount of wage which should have been paid to the plaintiff; there has been no proof of the worth of this person's work. In other words, there is a total failure of proof of the elements of the complaint which are required. The elements of the complaint required a proof of a contract."

The court treated the motion as one for a judgment of involuntary dismissal, as follows:

"The court is of the opinion that the plaintiff has failed to prove his case by a preponderance of evidence and the motion to dismiss or for a non-suit, whichever it is nowdays, is granted."

Formal judgment of dismissal was thereafter entered, from which plaintiff brought this appeal. Plaintiff also appealed from an order denying his motion for a new trial.

In 1962 and 1963, defendant (respondent), a general contractor, was engaged in the construction of a grain elevator at Genesee, Idaho. The elevator was being constructed under the direction of one Vic Bartholme, who was defendant's superintendent of construction. Plaintiff testified that in November, 1962, he inquired of Bartholme concerning employment on the construction of the elevator; that Bartholme told him he likely would need additional laborers later when construction reached the stage of "slipping," (that is, the alternate pouring of concrete and upward moving of the forms in erecting the walls of the structure); that Bartholme said laborers would be paid the union scale of $3.04 per hour; that the same statements were made by Bartholme upon inquiry made by plaintiff in February, 1963; that he made further inquiry in March and was told to come on the night shift that evening; at that time nothing was said between plaintiff and Bartholme concerning wages; that he worked 8 days and was paid in full at the rate of $3.04 per hour; that he worked an additional 40

hours, after which he was paid at the rate of $2.50 per hour, and deduction was made from his second paycheck to adjust payment for the first pay period to $2.50 per hour.

Two other local men were called as witnesses by the plaintiff. One testified that Bartholme had said the wage would be $3.04 per hour and that that was the lowest wage paid on the job. He also testified that he was paid at the rate of $2.50 per hour until he joined the union. The other witness testified concerning his conversation with Bartholme:

"Well, we talked about the warehouse and more so that when we went to work that laborers, that we was to get 3.04 an hour, and that was for laborers, and that is more or less—we didn't discuss any about the pay or anything like that."

On cross-examination this witness testified he was paid at the rate of $2.50 per hour.

Prior to commencement of the action, plaintiff through his attorney made demand upon defendant for a balance of wages due on the basis of employment at $3.04 per hour. In response to this demand, defendant by letter informed plaintiff's counsel that the agreement between plaintiff and the foreman on the job was for wages at $2.50 per hour; that plaintiff was not a union member and was unskilled and that

was the reason he was offered employment at $2.50 per hour; and that the first paycheck was issued on the basis of $3.04 per hour through mistake of the bookkeeper in defendant's office. A second demand by plaintiff's attorney was answered by the project superintendent Bartholme. In this communication Mr. Bartholme stated that he never made an agreement with plaintiff for a wage of $3.04 per hour and that he marked plaintiff's payroll card $2.50 per hour; and that the payroll clerk had made a mistake in paying him at the rate of $3.04 per hour for the first pay period. These demands by plaintiff and the replies thereto by defendant were placed in evidence by plaintiff.

Plaintiff also called the defendant for cross-examination. Defendant testified that Bartholme was authorized to hire and fire employees on the job, but was not authorized to fix or agree upon wages; that wages to be paid were fixed by the witness and his payroll clerk in the defendant's office in accordance with his agreement with the union and also upon consideration of the experience or skill possessed by the employee.

The defendant's wife was also called as a witness by plaintiff. She was defendant's payroll clerk. Her testimony was similar in effect to that of defendant.

While defendant was on the witness stand, plaintiff sought to prove that de-

fendant was bound by a contract existing between himself as a member of an association of general contractors and a district council of laborers. Upon objection being sustained, plaintiff made the following offer of proof:

"Bielenberg [plaintiff's attorney]: I would like to show by his being a member of the Associated General Contractors of America that he has assigned his bargaining rights to the laborers' union chapter; that he does have a contract with the union; that we have the contract here for him to identify; and that his contract with the union includes all employees that may come within his hire; and that this contract is a contract between two parties and it is a contract which also has a beneficiary such as a non-union member such as my client."

The court rejected the offer of proof.

Plaintiff urges that the court erred in treating defendant's motion for nonsuit as one for an involuntary dismissal and determining the motion on the theory that plaintiff had failed to prove his case by a preponderance of evidence. He urges that in the case of a motion for nonsuit "the question presented is not whether the plaintiff had produced a preponderance of evidence, but whether he has made a prima facie case." This was the rule in this state in both jury and non-jury cases prior

to the adoption of the present Rules of Civil Procedure in 1958. In Stratton v. Stratton, 87 Idaho 118, 391 P.2d 340 (1964), this court held that upon the consideration of a motion to dismiss under IRCP 41(b) in a non-jury case, the court was authorized to determine the cause upon its merits. Referring to the prior rule, this court in that case said:

"* * * In non-jury cases, however, this stringent test is not applicable, for if the court, which is the trier of the facts in such cases, determines that the plaintiff has failed in his burden of proof and grants a motion to dismiss, it is a determination of the cause on its merits; 2B Barron and Holtzoff, Federal Practice and Procedure, § 919, p. 151. 5 Moore's Federal Practice, (2d ed.) § 41.14 [4] note 16. * * * In a court case, upon a motion to dismiss, presented after the plaintiff has completed presentation of his evidence, the trial court which is the trier of the facts, may determine the cause on its merits." 87 Idaho at 125, 126, 391 P.2d at 344.

IRCP 41(b) is the same as was the federal rule 41(b) prior to the amendment of the federal rule in 1946. Prior to our adoption of the rule, it was amended by the U. S. Supreme Court by the addition thereto of the following:

"In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52 (a)." Fed.Code Ann., Rules, 1947 Ed. The fact that this court did not also adopt the amendatory provisions of the federal rule might be said to indicate that we rejected the authority which the amendment gave the federal trial courts. In explanation it should be said that prior to the amendment of the federal rule there had developed a division among federal circuit courts as to the meaning of the original federal rule 41(b), some holding that the trial court in a non-jury case should apply the same test in determining a motion to dismiss as in a jury case; that is, if plaintiff's evidence presented a prima facie case, the motion should be denied, and that the court was not privileged to weigh the evidence at that stage of the trial and enter judgment on the merits. It was pointed out in the Stratton case that the amendment to the federal rule was an enunciation of the construction given the original rule by the courts of the 6th, 7th and 9th circuits. Rather than reconcile the divergent views by construction of the rule, the Supreme Court chose to clarify the rule by the amendment. By adopting the construction given the rule by the courts of the 6th, 7th and 9th districts, in the Stratton case, we have in effect adopted the amendment added to the original rule by the Supreme Court of the United States. This construction of the rule gives meaning to the last phrase in IRCP 52(a), to-wit: "except as provided in rule 41(b)."

In this case the court did not make findings of fact and conclusions of law. However, the failure to do so is not assigned as error.

■■■ By further assignments, plaintiff urges that defendant's motion was defective in that it did not specify the particulars in which the evidence was insufficient. Though brief, we think the motion in that respect was sufficient. Plaintiff did not allege an express contract for wages at the rate of $3.04 per hour. The allegation of the complaint in that particular was:

"* * * that prior to commencing such work, the amount of compensation therefor was understood to be $3.04 per hour with the usual additional compensation for time and a half and double time, and no other amount was subsequently agreed on, nor was plaintiff advised of any decrease in wages; * * *."

And no proof was offered as to any standard, reasonable, or going wage, for services such as were performed by plaintiff.

 Plaintiff also assigns the ruling of the court precluding him from proving the contract between defendant and the labor union. There were union and non-union laborers on the job. Plaintiff was not a member of the union, but contended that the contract was one made for his benefit, and that he was a third party beneficiary thereof. Defendant's objection to the offered proof was that such a contract was not pleaded by plaintiff and that he was unprepared to meet the issue. No request for amendment of the complaint was made by the plaintiff, responsive to which the defendant may have asked for a postponement to prepare to meet the new issue. In view of the various defenses which may be interposed in an action by third party beneficiary, depending upon the circumstances and the terms of the contract relied upon, we think that such proof would have resulted in a fatal variance between the pleading and proof. 17A. C.J.S. Contracts § 576b. The admission of such proof, amendments of pleading, and opportunity to meet such issue, are addressed to the sound discretion of the trial court.

The issues raised by the motion for a new trial were the same as those herein considered.

Judgment and order denying new trial are affirmed.

Costs to respondent.

McQUADE, C. J., and McFADDEN, SMITH and KNUDSON, JJ., concur.