430 P.2d 488

**Willie E. VAN VRANKEN, Plaintiff-Appellant,**

v.

**FENCE–CRAFT and Myrl Bray, Defendants-Respondents.**

**No. 9829.**

Supreme Court of Idaho.

July 24, 1967.

Paul C. Keeton and James E. Scanlan, Lewiston, Idaho, for appellant.

Clements & Clements, Lewiston, for respondent Fence-Craft.

Warren F. Gardner, Orofino, for respondent Bray.

McFADDEN, Justice.

This action was instituted by Willie E. Van Vranken, appellant, for damages for the death of his fifteen-year-old daughter, and for personal injuries and property damage sustained by him as a result of an automobile accident which occurred October 31, 1963, on U. S. Highway No. 95, near the easterly city limits of Lewiston, Idaho. The accident occurred when appellant's 1950 Ford automobile, driven by him and in which appellant, his ten-year-old son and fifteen-year-old daughter, deceased, were riding, struck the automobile owned and operated by defendant Myrl Bray.

In his amended complaint, appellant alleged that at the time of the accident, Bray was operating his vehicle for and on behalf of respondent Fence-Craft, a California corporation engaged in Idaho in the buying of wood products for the making of fences. The amended complaint in substance alleged that Bray was the agent, servant, and employee of Fence-Craft and was operating his car within the scope of his employment by Fence-Craft at the time of the accident.

The cause was tried to the jury on issues framed by a pre-trial order. At the close of appellant's case, respondent Fence-Craft moved for an involuntary dismissal as to it (I.R.C.P. 41(b)) on the grounds:

"* * * that the evidence taken as a whole and every reasonable inference that could be drawn therefrom by reasonable men does not support * * * the allegation of the complaint that the defendant Bray was in fact an agent, serv-ant or employee of the defendant Fence-Craft, nor is there any evidence which can support the finding by reasonable men that the defendant Bray was at the time of the accident within the scope or course of any relationship of agency or master and servant at the time of the collision in question."

The trial court granted this motion and dismissed the case as to respondent Fence-Craft. Following dismissal of Fence-Craft, Bray presented his evidence, and the case was submitted to a jury which returned a verdict in favor of appellant in the sum of $10,000; judgment accordingly was entered against Bray, from which judgment no appeal has been taken. Although Bray has been denominated in the title as a respondent, in fact, he is not involved in any of the issues presented here. This appeal was taken only from the order and judgment of dismissal of the case as to respondent Fence-Craft.

Respondent Fence-Craft contends that the action of the trial court in granting the motion to dismiss as to it was correct on two grounds: first, the record fails to disclose any evidence of agency, master-servant, or employer-employee relationship between Bray and Fence-Craft that would authorize the application of the doctrine of respondeat superior, and further at the time of the accident, even if it be found such relationship did exist, the record affirmatively shows Bray, at the time of the accident, was acting outside the scope of employment; secondly, the pre-trial order reserved such question to the court for decision as a matter of law.

■ The second of Fence-Craft's contentions will first be considered, i. e., that by virtue of the framing of the issues in the pre-trial order, which order was signed and approved by all the parties, the issues on this appeal were reserved for the determination by the trial court, and thus were removed from the province of the jury regardless of the development of the evidentiary facts of appellant's case. Spe-

cifically, Fence-Craft points to the following portion of the pre-trial order:

"The contested issues of law are as follows:

A. Determination of proximate cause of the accident in question and whether the accident is attributable to the negligence of the defendant Myrl Bray or the contributory negligence of the plaintiff Willie E. Van Vranken;

B. Whether or not at the time and place of the accident the defendant Myrl Bray was, as a matter of law, the agent, servant and employee of Fence-Craft and engaged in some purpose of duty in the furtherance of his employment with Fence-Craft."

Although it is permissible under I.R.C.P. 38(c) to demand trial by jury as to part of the issues only, it is difficult to agree with Fence-Craft as to the particular issues set forth in subparagraph B above, that the parties thereby intended to waive a trial by jury on those issues. Both appellant in its amended complaint and respondent Fence-Craft in its answer endorsed a general request for trial by jury. I.R.C.P. 38(c) provides in pertinent part:

"In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury for all the issues so triable. * * *."

I.R.C.P. 39(a) provides in part:

"* * *. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury * *."

■ The right to trial of issues by jury rests on a constitutional base. Idaho Const. Art. 1, § 7 (Farmer v. Loofbourrow, 75 Idaho 88, 267 P.2d 113, decided under former I. C. § R10–301). The waiver of such right cannot be made or enforced unless it appears to have been made in conformity with existing statute or rule, and not by implication. Farmer v. Loofbourrow, supra; Neal v. Drainage Dist. No. 2, 42 Idaho 624, 248 P. 22. See also: Aetna Insurance Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937), (where the United States Supreme Court stated: "[T]he right of jury trial is fundamental[;], courts indulge every reasonable presumption against waiver."); Lee Wing Chau v. Fusae K. Nagai, 353 P.2d 998 (Hawaii, 1960); Mozes v. Daru, 4 Ariz. App. 385, 420 P.2d 957 (1966); 5 Moore's Fed.Practice ¶ 38.43, p. 335; 31 Am.Jur., Jury, § 47, p. 51; 50 C.J.S. Juries § 110, p. 821.

■ In the pre-trial order it is also stated: "The contested issues of fact are the position, course and speed of the vehicles immediately prior to and at the time of the collision." Immediately following that statement appeared the so-called issues of law, set out above. Even though they may have been denominated as "issues of law," in truth such issues are questions of mixed law and fact, inasmuch as the issues of negligence, contributory negligence, proximate cause (mentioned in Sub. A), and issues of agency, master-servant relationship and scope of duty or employment (mentioned in Sub. B), are normally issues to be submitted to the jury for resolution. That this is the viewpoint of the trial court and the respective parties is evidenced by the general verdicts submitted, the instructions requested by the respective parties and the instructions given by the court, none of which limited the factual issues to "position, course and speed of the vehicles immediately prior to and at the time of the impact and collision." It is our conclusion that there was no waiver of jury trial by the appellant on the issue of agency and scope of employment by reason of the pre-trial order.

Having determined that there was no waiver by appellant to right to trial by jury, the next question is whether the trial court erred in its dismissal of the case against Fence-Craft.

■ Two essential elements to be proven by a plaintiff in a negligence action for

damages allegedly caused by a defendant's alleged servant in the negligent operation of an automobile owned by the servant are: (1) that in fact a master-servant relationship existed and (2) that the agent was acting within the scope of his employment or in furtherance of the defendant's business at the time of damage or injury. Hayward v. Yost, 72 Idaho 415, 242 P.2d 971. In order to adduce evidence bearing on these issues, appellant called Myrl Bray, Fence-Craft's purported agent, for cross examination under the statute. Bray testified extensively to the character of his relation with the respondent Fence-Craft and the purposes of his trip to Lewiston. The following facts appear from his testimony both on cross examination under the rule and on the subsequent redirect examination.

Prior to 1962, Bray had been independently engaged in buying fence posts and selling them at a profit to Penta Post, an Idaho treating plant, and, later, to Fence-Craft, respondent herein. In 1962 or 1963, the nature of Bray's relationship with Fence-Craft changed and, after some negotiation, he became manager of a new picket mill built by Fence-Craft just west of Weippe, Idaho. Bray participated in the construction of the new mill, and during the period of construction, he was paid on an hourly basis. Since then, he and the employees of the mill under his supervision have been paid on a "piece-work" basis, i. e., in terms of the production of the mill. Bray and all of the other employees of the mill, numbering about six, are paid through the Fence-Craft payroll offices in California.

Mr. Bray's duties as mill manager included supervision of the mill's employees, over whom he was given the authority of hiring and firing, buying timber in the field, seeing that it was processed and shipped, and getting "any parts or repairs or anything." The Fence-Craft mill owned no vehicles other than a lift truck and, consequently, Bray used his own auto (the 1950 Buick involved in the accident) "for my own use and for company use." Bray continued to buy posts for Penta Post, and in so doing, was able to secure a supply of material necessary for the Fence-Craft operation, but unusable by Penta Post. He testified affirmatively he did not use this car for the business purposes of anyone other than himself or Fence-Craft; and, in fact, the car was indispensable to his operation of the mill for Fence-Craft.

On behalf of Fence-Craft, he had occasion to use his car "everyday" to drive out to buy timber or "to go to get parts and repairs for anything we needed." He had been authorized by his superiors to get whatever parts were necessary to keep the mill running, at the expense of the company. Bray regularly drove to Lewiston to get parts, "once a week or every two weeks" from the time of the start of the mill operations in the spring of 1963.

Mr. Speers, Bray's immediate superior at Fence-Craft, knew of this use of the car for company business, and knew that Bray had to regularly drive to Lewiston for some of the parts needed. On October 31, 1963, the date of the accident, Bray gave two reasons for his trip to Lewiston. His wife had an appointment with a Lewiston dentist for an extraction of some teeth, and he had to purchase or order "belts and teeth for the saw, edger" for use at the Fence-Craft mill. Bray had a charge account for and on behalf of Fence-Craft at Erb's Hardware in Lewiston, and purchases had previously been made by him and his wife (who was also employed by Fence-Craft) at Jameson's and the Golden Ranch store by Fence-Craft check, the Brays having also been authorized to sign checks for Fence-Craft.

On their arrival in Lewiston about 10:00 o'clock a. m., Bray and his wife "went to Erb's Hardware and Jameson's and then we went up to the doctor's [dentist's] office." Bray waited for his wife at the dentist's office, and following the extraction of her teeth, he drove her to the house of friends —the Roberts—in North Lewiston where, according to their plans, she was to spend the night; he, to return to the mill at Weippe.

Bray testified it was his intention to stop at the Golden Ranch store before returning to Weippe "to get some sprockets" for use at the Fence-Craft mill, and that his wife, who was suffering from the extractions, had the dentist prescribe pain killing medication, which prescription was at the Owl Drug store. Just before 5:00 p. m., Bray drove to downtown Lewiston, parked his car, walked to the Owl Drug store where he picked up his wife's prescription, and then walked over to the Golden Ranch, where he remained just long enough to determine that the "sprockets" he was seeking were not in stock, and then he returned to his vehicle.

Bray then drove out U. S. Highway 95, which was the direct return route to Weippe, until he reached the 31st Street intersection. He made a left turn into the median of the divided highway, came to a stop, and was crossing the west bound lane on U. S. Highway 95 when his car was struck by the Van Vranken car. Bray testified it was his intention to drop the prescription off for his wife at the Roberts' home, located a few blocks north of the main highway (U. S. 95) on 31st Street, and continue on to Weippe with the "belts" for the saw at the Fence-Craft mill, which he had purchased at Jameson's earlier in the day. These belts were found in the trunk of his car immediately after the accident. Bray testified the "teeth" were ordered also at Jameson's, to be sent to Weippe later. Introduced in evidence as Plaintiff's Exhibits 27 and 28 were two checks drawn on the Fence-Craft account, payable to "Jameson's" and signed by Mrs. Myrl Bray, which checks were in payment of the belts and teeth.

Respondent relies heavily on the case of Hayward v. Yost, 72 Idaho 415, 242 P.2d 971, in support of his position that, as a matter of law, any purported agency established by the appellant here is of the non-servant or "independent contractor" variety. In that case, a judgment rendered on a jury verdict was reversed in part because the evidence there adduced would not support the existence of a master-servant or employer-employee relationship. The evidence of the character of the agency relation and the scope of authority in Hayward v. Yost is not commensurate to the relation testified to by the defendant Bray as existing in the circumstances of the case at bar.

In Hayward v. Yost, supra, the purported agent, a cattle buyer, did not testify as to the character of any relationship he had with the defendant Livestock Commission. Extraneous evidence revealed only that some of this buyer's checks cleared through the Commission's account, which process was explained, by the manager of the Commission as indicative of a debtor-creditor relation with buyers who sold through the Commission's cattle ring, with each buyer guaranteeing his own account. No competent evidence at all appeared to the effect that the buyer ("agent") was acting for or on behalf of the Commission at the time of the accident there in question.

█ In the ultimate determination of whether one, alleged to have been operating within the scope of his employment when and where he committed a tort, was then and there functioning as a servant and not as an "independent contractor," an important guidepost is the right to control reserved by the employer over the functions and duties of the agent. Koch v. Elkins, 71 Idaho 50, 57, 225 P.2d 457. See: Joslin v. Idaho Times Publishing Co., 56 Idaho 242, 53 P.2d 323; 6 Blashfield Auto Law (3rd Ed. 1966) § 252.11, p. 61; Restatement, Agency 2d, § 220, comment d.

█ Since the principal concern is with the "right to control" the activities of the agent reserved by the employer and not with the extent of control actually exercised, except insofar as actual control may evidence the right, Burlingham v. Gray, 22 Cal.2d 87, 137 P.2d 9 (1943), the fact that the agent may be imbued with some discretion in the performance of his duties is not determinative of his status for purposes of the imposition of liability for his negligence against his principal. Unless the evidence bearing on the question is susceptible of

only one inference, the question is peculiarly one for the jury. 6 Blashfield, supra, § 252.11, p. 65 and cases cited at note 18. See also: Koch v. Elkins, supra; Garrison v. Ryno, 328 S.W.2d 557 (Mo., 1959); Graetch v. Dix, 68 Cal.App.2d 115, 156 P.2d 79 (Cal.App., 1945); Moeller v. De Rose, 222 P.2d 107 (Cal.App., 1950); 1 Cal.Jur. Inst.Civ. (4th Ed. 1956), No. 54–F.

■ In a jury case, a motion for involuntary dismissal made at the close of the proponent's case is indistinguishable in operation and effect from a motion for a directed verdict. I.R.C.P. 50(a); Christensen v. Stuchlik, 91 Idaho 504, 427 P.2d 278. See: Grieser v. Haynes, 89 Idaho 198, 404 P.2d 333; Stratton v. Stratton, 87 Idaho 118, 391 P.2d 340. Shaffer v. Adams, 85 Idaho 258, 263, 378 P.2d 816, discussing the rules applicable in evaluation of a motion for dismissal stated:

"The wording of the defendant's motion for a dismissal indicates that the motion was made pursuant to I.R.C.P. 41(b). In 2B Barron and Holtzoff, Federal Practice and Procedure, Sec. 919, p. 148, the rule with regard to the granting of such a motion is stated as follows:

"'In a jury case, sufficiency or insufficiency of the evidence upon a motion for dismissal—or a motion for directed verdict as it should be called— depends upon the facts and circumstances in each case * * *. It is sufficient to say that an involuntary dismissal should be denied when substantial testimony meets the burden of proof and warrants submission to a jury. The testimony and all reasonable inferences therefrom must be viewed in the light most favorable to the plaintiff.'

"In Smith v. Big Lost River Irrigation District, 83 Idaho 374, 364 P.2d 146, this Court stated:

"'A motion for directed verdict * * * admits the truth of the adversary's evidence and every inference of fact which may be legitimately drawn therefrom. (citations omitted) This Court is firmly committed to the rule that a trial court should not take a case from the jury unless, as a matter of law, no recovery could be had upon any view which properly could be taken of the evidence. (citation omitted.)'

See also Buffat v. Schnuckle, 79 Idaho 314, 316 P.2d 887, wherein this Court stated:

"'The court may not weigh the evidence, or resolve the conflicts therein, or determine what conclusions should be drawn therefrom. That is the function of the jury, and the essence of a jury trial.'"

For the purpose of a motion for directed verdict (motion for dismissal) the movant admits the truth of the adversary's evidence and every reasonable inference of fact which may be legitimately drawn therefrom, Hayward v. Yost, 72 Idaho 415, 242 P.2d 971, or as is sometimes stated, on a motion for directed verdict the evidence and all reasonable inferences to be drawn therefrom must be considered in the light most favorable to the opponent. Pigg v. Brockman, 85 Idaho 492, 381 P.2d 286.

■ When viewed in the light most favorable to appellant, the testimony of the agent Myrl Bray to the effect that he was continuously employed as the manager of the Fence-Craft mill, his enumeration of his regular duties incident to his functioning as a manager, which duties specifically included an obligation to procure all necessary parts, and his further testimony and the evidence reflecting that the use of his own vehicle was necessary to the discharge of his duties, that he was regularly required to drive to the city of Lewiston to get parts, and that his Fence-Craft superior knew of these Lewiston trips and their necessity, provides an ample foundation from which reasonable men might infer that he was in fact a servant of Fence-Craft authorized to operate his vehicle on behalf of his employer in the area where the accident occurred. See: Alberts v. Mutual Service

Casualty Insurance Co., 80 S.D. 303, 123 N.W.2d 96 (S.D., 1963).

Respondent next argues that liability should not be asserted against a master where some business purpose of the master is to be accomplished merely as an incidental to the primary personal purpose of the venture or mission, quoting from 8 Am.Jur.2d § 635. While we are cognizant of this general principle, we are also aware that an act may be within the scope of employment although done in part to serve the personal purposes of the servant. Manion v. Waybright, 59 Idaho 643, 86 P.2d 181; Restatement, Agency 2d, § 236.

In Baldwin v. Singer Sewing Machine Co., 49 Idaho 231, 287 P. 944, cited by respondent, this Court reversed a judgment entered on a jury verdict against the master. There, the employee, a salesman, had gone to Nampa on business, as he testified, "for the company and himself." However, unlike the instant case, the salesman terminated his dual-purpose venture when he returned to Boise, parked his car, spent some time at the company's office, and had his supper. The accident occurred thereafter when he returned to his car and had started on the way to his residence. Of those circumstances, this Court reasoned:

"After reaching Boise, had he continued homeward, it might be said that he was concluding a trip made in his employer's business, but he terminated his trip at his own option when he went to the company's office, * * *." 49 Idaho at 238, 287 P. at 946.

In the instant case, the agent Bray testified to a joint purpose for his trip to Lewiston and, similarly, to a joint immediate purpose for his return to downtown Lewiston after leaving his wife at the Roberts' home. In view of apparent mutual advantage, whether he was acting principally in furtherance of his employer's business at the time and place of his collision with appellant's car was, on this point, for the determination of the trier of fact, the jury.

Lastly, respondent contends that the trial court could nevertheless properly determine as a matter of law that, in turning left onto 31st Street for the sole immediate purpose of dropping off the prescription for his wife at the Roberts' home, Bray thereby deviated from the direct return route to the Fence-Craft mill at Weippe and, hence, from any purpose to benefit his employer. However, the better reasoned authorities dealing with deviations by an employee from the geodesic route have generally recognized that a proportionately slight or expectable deviation will not relieve an employer of vicarious liability; and except where the deviation is gross, the jury should determine the scope of employment question as one of fact. Baker Driveaway Co., Inc. v. Clark, 162 F.2d 181 (4th Cir., 1947); Murray v. Kauffman Buick Co., 197 Wash. 469, 85 P.2d 1061 (1938); Lindenmuth v. Steffy, 173 Pa. Super. 509, 98 A.2d 242 (1953); Edwards v. Benedict, 70 N.E.2d 471 (Ohio App., 1946); Loper v. Morrison, 134 P.2d 311 (Cal.App., 1943); 6 Blashfield, supra, § 253.73, pp. 237–239. See generally: Prosser, Torts (2nd Ed. 1955) § 63, pp. 353–354; 60 C.J.S. Motor Vehicles § 437(d), p. 1103; 35 Am.Jur. Master and Servant § 556, pp. 990–991.

Upon the foregoing, we are of the opinion that the evidence was sufficient to establish a *prima facie* case for appellant on the issues presented; and thus, the order and judgment of dismissal must be reversed, and the cause remanded for new trial.

The order and judgment of dismissal is reversed and the cause remanded for a new trial. Costs to appellant.

SMITH and McQUADE, JJ., concur.

SPEAR, Justice (dissenting).

I dissent.

In addition to the facts related in the majority opinion, it is important to note that evidence adduced at the trial established:

(1) After the erection of the mill Bray, as superintendent, was paid by Fence-Craft

on the same basis as all the other employees, i. e., by piecemeal—so much per picket.

(2) Fence-Craft had no supervision whatever over when Bray worked, where he worked or what type of work he would perform. This determination was made entirely by Bray himself as to whether he would supervise the work of the other employees at the plant or drive into the woods to buy timber, not only for pickets for Fence-Craft but also for poles for Penta Post.

(3) Bray's car, which was the one involved in the accident, was purchased by Bray personally. Fence-Craft invested no money whatever, either by way of advancement or in any other manner, in the purchase of this automobile. The car was used by Bray for his personal use, for Fence-Craft, and for Penta Post, in buying timber for posts or pickets.

(4) Fence-Craft had no control whatever over the use of this car by Bray. Additionally the company did not buy any gas nor pay for any maintenance for the car.

(5) In order to obtain necessary parts to keep the plant in operation, as far as Fence-Craft was concerned Bray could order the parts by phone, by mail, or obtain them in any other manner over which Bray had complete control.

(6) Bray admitted that the real purpose of the trip to Lewiston was to have his wife's teeth extracted, and as an "incidental part" he was also going to see about some belts and teeth for the saw-edger.

(7) Bray had known that this trip was going to be essential for not only was it necessary for his wife to get an appointment with the dentist but since a general anesthetic was to be administered before extracting her teeth, it was also necessary to secure an appointment with an anesthetist. All this was known by Bray at least two weeks prior to the date of the fatal trip.

(8) That at the time of the accident Bray was on a mission completely personal to himself, i.e., the delivery of pain-killing medicants to his wife at the home of the friends in North Lewiston, completely divergent from any route to Weippe, Idaho, the location of the Fence-Craft plant.

Under these facts the trial judge committed no error in granting Fence-Craft's motion for a nonsuit or an involuntary dismissal, because the evidence was such that reasonable minds could not differ in concluding that (1) the master-servant relationship did not exist between Bray and Fence-Craft on the date in question; and (2) even if such relationship had existed the purpose of the trip was primarily personal to Bray and only incidental to the business of his employer. Koch v. Elkins, 71 Idaho 50, 225 P.2d 457; Hayward v. Yost, 72 Idaho 415, 242 P.2d 971; Baldwin v. Singer Sewing Mach. Co., 49 Idaho 231, 287 P. 944. For an exhaustive article on the holdings of various courts on the questions involved herein, see 52 A.L.R.2d 287, and particularly those cases gathered at pages 339–343.

It will be noted from the above-quoted article that several states have concluded that, on factual situations not too dissimilar from those presently at hand, *as a matter of law* the purported principal has been absolved of responsibility for the negligence of its purported agent.

There is another reason why the holding of the trial court should be sustained. Prior to the trial of this matter, all parties, through their attorneys, approved and signed a pre-trial order, which was prepared by appellant's attorney and executed by the trial court. The pre-trial order specifically provided that one of the contested issues of law was:

"Whether or not at the time and place of the accident the defendant, Myrl Bray was, *as a matter of law,* the agent, servant and employee of Fence-Craft and engaged in some purpose of duty in furtherance of his employment with Fence-Craft." (emphasis supplied)

Once a pre-trial order is entered, it controls the subsequent course of action unless modified at the trial to prevent mani-

fest injustice. I.R.C.P. 16. After the conference is held, certain agreements made and the pre-trial order entered, the parties have ten days within which to object to the pre-trial order. Uniform District Court Rule No. 18. Thereafter the parties are bound by the order. Attorneys should be just as well prepared to participate in a pre-trial conference as they would be prior to participating in the trial itself, because their admissions, stipulations and agreements are as binding as if made in open court. Therefore this issue was properly submitted to the court for determination. The determination made by the trial court is sustained by substantial and competent evidence, as previously hereinbefore delineated, and appellant should not now be heard to complain that he, in fact, intended that these questions be presented to the jury for determination.

The order of the trial court granting Fence-Craft's motion for a nonsuit or an involuntary dismissal should be affirmed and sustained.

DONALDSON, District Judge, concurs in this dissenting opinion.