OPINION
{¶ 1} Jason Keating, by and through his surviving spouse and daughter, Christa and Gabriella Keating (appellants), appeal from the Lake County Court of Common Pleas' order granting summary judgment in favor appellees, Classic East, Inc., et al. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} On May 13, 2006, Jason Keating ("the decedent"), lost control of a motorcycle he was riding on the premises of his employer, appellee Classic East, Inc. The accident propelled the decedent into a garage located on Classic East's property causing multiple, severe head injuries which led to his death several days later. The general facts leading to these unfortunate circumstances are as follows:
 {¶ 3} Classic East, an automobile dealership, had acquired a 2005 Buell Lightning XB126 motorcycle on trade in early May of 2006. The motorcycle was described as a racing bike or "crotch rocket." The dealership did not frequently sell motorcycles, but had a standing policy that, due to insurance concerns, prospective buyers were prohibited from riding or test driving them. Classic East also had a recognized policy of parking motorcycles inside an on-premises garage during non-business hours. Although management at Classic East had determined only those with experience riding motorcycles were authorized to park them, there was no evidence this informal policy was communicated to sales associates or other employees.
 {¶ 4} On Thursday, May 11, 2006, the decedent's manager, Ray Sminchek, testified he observed the decedent on the motorcycle. Sminchek did not believe the decedent to be an experienced rider and therefore testified he expressly directed the decedent to "stay off" the bike. Despite his previous order, Sminchek testified he again observed the decedent riding the bike on the morning of the accident. Sminchek approached the decedent and indelicately demanded him to "[q]uit fucking around on the bike because that's how stupid shit happens at work." In Sminchek's view, the decedent "knew he was not supposed to be on [the motorcycle]." A fellow employee, Chuck Willis, overheard Sminchek's order. *Page 3 
 {¶ 5} Near the end of the business day, Ryan Silbaugh, a sales associate, was told by sales manager John Barner to put the bike in the garage for the evening. Silbaugh, a motorcycle owner, had been deemed by management an experienced rider. As Silbaugh approached his destination, he noticed the decedent was already near the garage in which the bike was to be parked. Silbaugh testified the decedent walked up to him and stated "[l]et me ride this real quick." Silbaugh dismounted the bike and allowed the decedent to drive it. Silbaugh was unaware of Sminchek's prior interdictions.
 {¶ 6} The decedent drove the bike to the back of the rear parking lot, approximately 150 yards from the rear entrance of the dealership, turned around, and began his return at a high rate of speed. Silbaugh began walking in the opposite direction when he heard "the bike kind of skidding towards [him] and heard [the decedent] hit the building." According to Silbaugh, the unmanned bike was sliding toward him on its side and he had to step out of the way to avoid being struck. According to an accident reconstructionist, the decedent was moving at approximately 66 m.p.h. when he lost control of the bike and was catapulted into a service garage.
 {¶ 7} The decedent, by and through his surviving spouse, Christa Keating, as well as his daughter, Gabriella Keating, filed a claim for Workers' Compensation asserting the decedent's accident occurred within the scope of his employment. After a hearing, the claim was "disallowed" on September 5, 2006 because, in the Industrial Commission's District Hearing Officer's view, "the injury occurred when the claimant deviated from his employment." Mrs. Keating appealed the order of the District Hearing Officer and, on November 15, 2006, the Industrial Commission's Staff Hearing Officer *Page 4 
determined that the "[d]ecedent was engaged in horseplay or a frolic of his own when he sustained the injuries from riding a motorcycle * * *." A second appeal to the Industrial Commission was filed on November 28, 2006 but was refused on November 29, 2006.
 {¶ 8} On February 1, 2007, Mrs. Keating and her daughter appealed the Industrial Commission's decision to the Lake County Court of Common Pleas. Mrs. Keating also brought additional claims against Classic East as well as one of the decedent's co-workers. However, on March 22, 2007, upon appellees' motion, the trial court severed the additional claims, determining they were unrelated to the Workers' Compensation appeal.
 {¶ 9} On August 24, 2007, appellees filed their motion for summary judgment, arguing appellants could not, under any reasonable interpretation of the facts, demonstrate the decedent's injuries occurred in the course of and arose out of his employment. Therefore, appellees concluded there were no genuine issues of material fact to be litigated regarding appellants' entitlement to participate in the Workers' Compensation Fund.
 {¶ 10} On September 7, 2007, appellants filed their motions in response to appellees motion for summary judgment. In their brief in opposition, appellants asserted there remain genuine issues of material fact as to whether the decedent's action was occasioned by horseplay or a frolic; hence, appellants concluded there were material issues of fact relating to whether he was acting within the scope of his employment at the time of his accident. *Page 5 
 {¶ 11} On December 12, 2007, the trial court awarded summary judgment in appellees' favor, ruling, as a matter of law, the decedent was acting outside the course and scope of his employment at the time of the accident.
 {¶ 12} Appellants now appeal and assert the following assignment of error:
 {¶ 13} "The [c]ourt erred when it granted [d]efendant-[a]ppellees [m]otion for [s]ummay [j]udgment."
 {¶ 14} In reviewing a trial court's decision on a motion for summary judgment, an appellate court applies the same standard as a trial court is required to apply in the first instance, viz., whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. See, e.g., Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 327. In applying this standard, the evidence is construed in favor of the nonmoving party, and summary judgment is proper only if reasonable minds could nonetheless conclude that judgment should be entered in favor of the movant. Horton v.Harwick Chem. Corp., 73 Ohio St.3d 679, 686-87, 1995-Ohio-286.
 {¶ 15} At issue in the underlying matter is whether there remain genuine issues of material fact as to whether the decedent was acting in the course and scope of his employment when he was killed. Appellants answer this query in the affirmative. In support, appellants argue the decedent was in the process of parking the motorcycle inside the garage, pursuant to an established Classic East policy, when he was fatally injured. Appellants acknowledge that Ray Sminchek, a manager at Classic East, Inc., testified that he expressly forbade the decedent from "joyriding" on the motorcycle but maintain "there is no actual proof that [the decedent] had knowledge of a policy that *Page 6 
forbade him from putting the bike away." Moreover, appellants maintain that even though the decedent drove the bike to the rear of appellees' parking lot, nothing in the record precludes the inference that the decedent's path was merely an "indirect route" to the garage not expressly forbidden by appellees' management. Appellants' therefore conclude there is a genuine issue of material fact as to whether the decedent's injuries occurred within the course and scope of his employment which would create an issue for trial as to whether appellants' are permitted to participate in Ohio's Workers' Compensation Fund.
 {¶ 16} To qualify for workers' compensation, an employee must have suffered an injury "in the course of, and arising out of," his or her employment. R.C. 4123.01(C); see, also, Saldana v. Erickson Landscaping Construction, 11th Dist. No. 2003-G-2546, 2005-Ohio-142, at ¶ 12. This test is conjunctive and, as such, each prong of the formula must be satisfied before an injury is deemed compensable under the Fund.Fisher v. Mayfield (1990), 49 Ohio St.3d 275, 277. The phrase "in the course of" employment is associated with "the time, place and circumstances of the injury." Id. The "arising out of" employment element contemplates a causal nexus between the injury and employment. Id. at 278. With respect to the latter, the determination as to whether a causal connection exists depends upon the totality of the circumstances surrounding the accident, including "`(1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident.'" Id. at 277, quoting, Lord v. Daugherly
(1981), 66 Ohio St.2d 441, syllabus. *Page 7 
 {¶ 17} These guiding principles, while construed liberally in favor of the employee, must nevertheless be measured against the purpose of Ohio's Workers' Compensation Act. In particular, the Act "is not meant to impose a duty on an employer as an absolute insurer of the employee's safety. Rather, the Act is intended to protect employees against the risks and hazards incident to the performance of their duties."Carrick v. Riser Foods (1996), 115 Ohio App.3d 573, 577, citing,Phelps v. Positive Action tool Co. (1986), 26 Ohio St.3d 142. Therefore, injuries that are occasioned by an employee's misconduct, "deviant behavior," or "horseplay" are not compensable because such actions fall beyond the scope of employment. Kohn v. Trimble (Nov. 17, 1995), 11th Dist. No. 95-T-5210, 1995 Ohio App. LEXIS 5105, *8; see, also,Carrick, supra.
 {¶ 18} The burden is on the claimant to establish an injury occurred "in the course of, and arising out of" his or her employment. French v.AT T Technologies, Inc. (1991), 69 Ohio App.3d 342, 347.
 {¶ 19} Here, it is uncontested that any motorcycle on the lot was to be placed in the dealership's garage during non-business hours. However, the record is not entirely clear as to which employees were specifically authorized to put motorcycles into the garage at closing. With respect to this issue, Ray Sminchek, a sales manager for Classic East, testified that he was aware of a "verbal policy" that permitted only those who had experience with motorcycles could put the motorcycle away. According to Sminchek, this meant either John Barner, another sales manager, or Ryan Silbaugh, a sales associate could put the bike away because they either owned or previously owned *Page 8 
a motorcycle. Sminchek admitted he was aware of no formal, written policy as to who was authorized to put the bikes away.
 {¶ 20} Barner testified that he was personally advised by Classic's general manager, Greg Mayson, that only experienced persons were permitted to ride the motorcycle. According to Barner, Mayson specifically told him that Barner, Silibaugh, and Mayson, himself, were the only individuals authorized to put the bike in the garage. Notwithstanding the general consistency of the unwritten policy among management, Silibaugh testified he was never told he was one of only three individuals authorized to store the bike.
 {¶ 21} Although the alleged policy was not disseminated among the employees of Classic East, Sminchek testified that he had advised the decedent to stay off the bike on two occasions. First, Sminchek testified he observed the decedent riding the bike two days before the accident when it stalled. Sminchek asserted he told the decedent to "stay off of [the motorcycle], not to be screwing around on it, not to be on it." This initial statement was not independently corroborated.
 {¶ 22} However, Sminchek further testified that, despite what he had told him earlier, he observed the decedent riding the bike again on the morning of the accident. Sminchek testified he excoriated the decedent for his actions, demanding that he "[q]uit fucking around on the bike because that's how stupid shit happens at work." Evidence showed that a fellow sales associate, Chick Willis, witnessed this later reprimand.
 {¶ 23} Finally, the record reveals that, at approximately 5:30 p.m., Saturday, May 13, 2006, Ryan Silbaugh was told by sales manager John Barner to put the motorcycle away as the dealership was closing at 6:00 p.m. Silbaugh was approached by the *Page 9 
decedent near the garage who stated "[l]et me ride this real quick." Silbaugh surrendered the motorcycle to the decedent who proceeded to drive the bike to the back of the parking lot, approximately 150 yards from the garage. Silbaugh turned to walk towards the garage and overheard the decedent "coming up pretty quick." Silbaugh testified he then turned around and "that's when he lost control." Silbaugh, an experienced rider, testified that, immediately prior to the accident, he heard the decedent "switching into second gear." According to Silbaugh, the motorcycle in question went "at least 50, 60 miles an hour" in first gear. Although he did not see the actual accident because his view was blocked by a building, Silbaugh speculated, from what he did see and hear, that the decedent was probably traveling "60, 70 miles an hour" at the time he lost control.
 {¶ 24} With the foregoing facts in evidence, we hold the injuries leading to the decedent's death were not sustained "in the course of, and arising out of" his employment. With respect to the initial prong, although appellants put forth sufficient evidence relating to the time and place of the injuries (during work hours, on appellees' parking lot), we do not believe there is adequate evidence indicating the circumstances which occasioned the injuries were "in the course of" the decedent's employment.
 {¶ 25} Specifically, there is no reasonable, employment-oriented justification for the decedent to take the bike 150 yards away from the garage in which it was going to be parked and drive it at an excessive speed across the parking lot. Contrary to appellants' theory, no testimony or evidence was submitted that would allow one to reasonably construe the decedent's path to the garage as merely an "indirect route." The use of an "indirect route" can keep an employee's actions within the scope of his or *Page 10 
her employment where the divergence is "immaterial." See, e.g.,Edwards v. Benedict (1946), 79 Ohio App. 134, 138. The evidence indicates that both Silbaugh and the decedent were near, if not adjacent to, the garage when Silbaugh surrendered the motorcycle to the decedent. We believe appellant's act of removing the bike some 400 feet away from the garage when he was able to drive it directly into the garage to park it pursuant to Classic East's policy does not represent an immaterial deviation. By implication, the decedent's actions had to be prompted by self-amusement, i.e., "joyriding."
 {¶ 26} We recognize the decedent may have been unaware of the informal, "verbal" policy relating to who was permitted to put the bike in the garage. However, the evidence indicates (and appellants concede), at the least, the decedent was not permitted to joyride. The circumstances of this case indicate the decedent acted in direct opposition to this order. Hence, as a matter of law, the decedent's injuries could not have occurred "in the course of" his employment.
 {¶ 27} Moreover, even were there a genuine issue relating to the initial prong, the evidence nevertheless reveals the injury did not "arise out of" the decedent's employment. That is, there is insufficient evidence of a causal connection between the decedent's injury and his employment to justify appellants' participation in the Workers' Compensation Fund. The facts reveal that the first prong of theFisher, supra, test was met as the injury took place on Classic East's premises. The remaining inquiries are whether the decedent's activities conveyed a benefit to Classic East and the degree of control Classic East exercised over the situation. *Page 11 
 {¶ 28} With respect to the former issue, appellants' assert that the decedent was in the process of putting the motorcycle in the garage when he lost control. They maintain that simply because the decedent took an "indirect route" to the garage is immaterial detail because, at the time of the accident, he was sufficiently near the garage to create a genuine issue of material fact as to whether he was acting within the scope of his employment, i.e., putting the bike away. Although we have already found the route the decedent took a material deviation from any legitimate employment purpose, we find appellant's argument unpersuasive for additional reasons.
 {¶ 29} First, there is nothing in the record indicating the decedent had any designs on returning the motorcycle to the garage after Silbaugh surrendered the bike to him. Although Silbaugh testified he "expected" the decedent to return the bike to the shop, he did not indicate how he arrived at this expectation. Silbaugh testified the decedent approached him as he was preparing to store the bike and stated "[l]et me ride this real quick." This statement does not permit the inference that the decedent had any intent on returning the bike to the garage to park it. After all, had appellant intended on putting the bike away, he could have done so easily without "riding" it to the opposite side of the dealership's parking lot. Reviewing the totality of the circumstances, we cannot conclude Classic East was benefitted by the decedent's presence at the scene of the accident.
 {¶ 30} Furthermore, even if there was some indication that the decedent was going to put the bike away, there is no evidence in the record that would suggest the decedent's so called "indirect route" was necessary. This is relevant when viewed in light of Sminchek's colorful admonishment on the day of the accident. Sminchek's *Page 12 
directive, viewed in a light most favorable to appellants, implies the decedent was not permitted to joyride because people could get hurt and equipment damaged. As a sales manager, Sminchek was the decedent's boss and therefore had authority to direct the actions of sales associates under his supervision. Although Classic East had a policy of putting the motorcycle away during non-business hours, the decedent was forbidden from, phased euphemistically, "recreating" on the bike. As there was no evidence that the decedent was required to take the bike 150 yards to the back of the rear parking lot and speed toward the garage to put it away, the "indirect route" he took can only be viewed as a form of joyriding. This is an unequivocal breach of Sminchek's earlier order. An employee who acts in direct defiance of a superior's order that is premised upon reasonable concerns (such as employee safety or avoiding property damage) cannot be construed to convey any benefit to the employer.[1]
 {¶ 31} Given the evidence in the record, we hold there is no genuine issue of material fact relating to whether the decedent's injuries occurred "in the course of, and arising out of" his employment. Rather, the decedent's representation that he wanted to ride the motorcycle "real quick" indicates his actions involved either "horseplay," which he instigated or misconduct, both of which fall outside the scope of the decedent's employment.
 {¶ 32} In Indus. Com v. Bankes (1934), 127 Ohio St. 517, the Supreme Court of Ohio set forth the rule of noncompensability in a "horseplay" situation as follows:
 {¶ 33} "An injury resulting from sportive play by fellow employees, instigated and engaged in by the injured employee while on duty, is not caused by or connected with *Page 13 
the workmen's employment within the purview of the Workmen's Compensations Act." Id. at paragraph three of the syllabus.
 {¶ 34} When the decedent intercepted Silbaugh for purposes of commandeering the motorcycle, the facts indicate that he acted independently for his own ostensible amusement. In doing so, the decedent set in motion the chain of events that led to the accident causing his death. Such "horseplay," which the decedent instigated and participated in alone, fell outside the scope of his employment.
 {¶ 35} Moreover, after Sminchek ordered the decedent not to joyride, he defied the order and this defiance led to the ultimate accident. By acting contrary to his boss' specific wishes, his actions represent misconduct or "deviant behavior."
 {¶ 36} For the reasons set forth above, appellant's sole assignment of error is without merit and the decision of the Lake County Court of Common Pleas is therefore affirmed.
DIANE V. GRENDELL, P.J., TIMOTHY P. CANNON, J., concur.
[1] Because of this holding we need not address the "control" prong of the Fisher test. *Page 1