COLOTTA *v.* PHILLIPS

No. 39954 February 27, 1956 85 So. 2d 574

*Neill, Clark & Townsend,* Indianola, for appellant.

*Lyon, Davis & Price,* Indianola, for appellee.

ETHRIDGE, J.

This is an appeal from a judgment of the Circuit Court of Sunflower County in favor of appellee-plaintiff, Sandy Phillips, against appellant D. Colotta in the amount of $4,000. The damages claimed are for per-

sonal injuries received by appellee when appellant's truck, driven by his servant, Jessie Moon, ran into appellee while he was walking on a street in the City of Indianola. The principal question is whether at the time of the accident Colotta's servant and truck driver, Moon, was acting in the scope of his employment, or had departed from it so substantially as to remove him therefrom.

Colotta owns and operates a produce company in Indianola. Moon had been driving a delivery truck for Colotta for 12 years, making deliveries of produce, such as fresh fruits and vegetables, in Sunflower, Coahoma and surrounding counties, or as Moon testified, "all over the country." He made deliveries twice a week to the Town of Baird which is situated about six or seven miles southeast of Indianola. In making deliveries over his routes, Moon drove Colotta's truck, and necessarily he had a considerable area of discretion in determining his routes and the best methods of handling deliveries and collections.

On September 21, 1954, Colotta directed Moon to deliver to two stores in Baird some produce consisting of bananas, potatoes and cabbages. He instructed Moon to go to Baird, make the deliveries and collections, and to return when that was done. Moon left in the truck with the produce around 3:00 p.m. He made the deliveries, collected the money, and returned to Indianola around 7:20 p.m. that evening. Colotta said he should have been back not later than 6:00 p.m., but appellant offered no evidence to show a deviation from the employment prior to Moon's return to Indianola. He came in the northeast side of town and drove south of Hannah and Depot Avenues, coming within a block of Colotta's place of business, which was located on Court Avenue. However, instead of turning at the point where he was a block from Colotta's establishment, Moon drove south for five or six blocks, then turned west for two blocks

and turned north on Church Avenue. Court Avenue, on which Colotta's place of business is situated, is an extension of Church Avenue, and is approximately six blocks north and on the same street where Moon in the truck turned on to Church Avenue.

Moon testified that as he turned north on Church Avenue his house was the second house on the left or west side of that street; that he was going to his house first to see what his wife wanted for supper; and that he then intended to continue north on the same street to his master's place of business, six blocks north. Moon turned over to the left side of the street to park in front of his house for the stated purpose, but before he stopped he ran into appellee Phillips, an elderly Negro man who was walking south along the west edge of the street. At the time of the collision, Moon had in his possession nine or ten dollars which he had collected for the delivered produce, and the truck which he was driving still had in it some produce. All of this he planned to return to Colotta's place of business along with the truck after the proposed stop at his house to find out what his wife wanted for supper.

Moon said that he was going to Colotta's place of business after he made the stop at his house for the stated purpose; that he planned to take the produce, truck and money back to Colotta's after he made the stop; that he did not consider he was off duty until he took the undelivered produce back to Colotta; and that he had no fixed hours of work, and his working day ended when he got back and delivered the truck and other things to Colotta.

A short time after the accident Policeman Fulton arrived at the scene. He said that Moon was intoxicated at that time. Moon stated that he had not had a drink before the collision, but after it and before the policeman arrived he drank about one fourth of a pint of whiskey. He also said that Colotta told him how he

should go to Baird, naming particular streets and highways, but he did not instruct him about a return route, simply saying to "come on back to his place." Colotta denied that he gave Moon any specific route to go to Baird, but said he told him to go there and come on back; that he had never been to Baird in his life. At the time of the trial, Moon was still employed by Collotta and driving his truck. Moon testified that "on several occasions" since he had been employed by Colotta he had taken his master's truck to his home, but that "he didn't give me any orders to take it there." He did not say that Colotta did not know that he took the truck to his home from time to time. Colotta said that he did not authorize Moon to go to his house, but he did not say that he did not know that Moon drove to his home at various times.

 Several well-established propositions are pertinent to this case. In an automobile accident case involving a truck which is driven by the owner's regular driver, it is presumed that the driver, Moon, was at the time engaged in the scope of his employment. The burden of proof is on the master to prove that Moon abandoned the duties of his employment and went about some purpose exclusively his own which was not incidental to his employment. And where the testimony leaves this question in doubt, the issue must be submitted to the jury. Eagle Motor Lines, Inc. v. Mitchell, 78 So. 2d 482, 485 (Miss. 1955).

 The principle which controls this case is stated in 57 C.J.S., Master and Servant, Sec. 574 d, pp. 327-328: "The mere deviation or departure by a servant from the strict course of duty, although for a purpose of his own, does not in and of itself constitute such a departure from the master's business as to release him from liability for injuries inflicted by the act of the servant. The liability of the master depends on the degree of deviation and all the attendant circumstances. 

A slight deviation by the servant will not release the master from liability. In order to relieve a master from liability for the servant's acts, on the ground that the servant had deviated from his service, the deviation must be so substantial as to amount to an entire departure therefrom and be for purposes entirely personal to the servant.''

This well-established rule was cited in Southern Bell Telephone and Telegraph Co. v. Quick, 167 Miss. 438, 451, 149 So. 107 (1933), where the Court quoted with approval from a Connecticut case as follows: ''But in by far the greater number of cases where the question of the master's responsibility turns, as in the present case, principally upon the mere extent of deviation by the servant from the strict course of his employment or duty, it has been generally held to be one of fact and not of law. In such case it is and must usually remain, a question depending upon the degree of deviation and all the attendant circumstances. In cases where the deviation is slight and not unusual, the court may and often will, as matter of law, determine that the servant was still executing his master's business. So, too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions.''

The same principles are stated in 35 Am. Jur., Master and Servant, Sec. 556. ''Generally, it may be said that in order for an employer to escape liability for an act of his employee on the ground of the latter's deviation or departure from the employer's business for a purpose of his own, it must be made to appear that the employee abandoned and turned aside completely from the employer's business, to engage in some purpose wholly his own, for it is not every deviation from the direct

line of his duties on the part of an employee that constitutes a turning aside from and an abandonment of his master's business. A slight deviation by an employee in charge of his employer's vehicle, for his own purposes, when he is on business for his master does not affect the liability of the master. As has been said, there is an area, beyond and around the place within which the strict terms of the employment require the servant to remain, into which common experience with, and observation of, human nature suggest that he will, as inclination dictates, probably go, this is a risk which properly belongs to the business, and injury to the public by the servant while within this area should ordinarily be accepted as a burden upon the industry itself . . . . Whether the extent of his departure from the scope of his employment, or the area of his service, was so unreasonable as to make of his act of deviation an independent journey of his own, rather than a mere detour or one incidental to his employment, is a question of degree which depends on the facts of the case and is a matter for the determination of the jury, unless the deviation is so great, or the conduct so extreme, as to take the servant outside the scope of his employment and make his conduct a complete departure from the business of the master''

■■■ Appellant had the burden of proof to show that Moon had substantially departed from the course of his employment, that is, to show that his deviation was so substantial as to amount to an entire departure therefrom. This issue was a question of fact for the jury. We are dealing with a question of the degree of departure, and whether the extent of the deviation was such as to remove Moon from the scope of his employment. The injury occurred in an instrumentality furnished by the master, the produce truck, and during Moon's working hours. He was on the street leading to and only six blocks south of his master's place of busi-

ness. He had in his possession money which he had collected for his master, and the truck also contained some of Colotta's produce. Moon said that he intended to drive on to Colotta's place after he stopped to see what his wife wanted for supper, and that he considered he was not off duty until he returned the undelivered produce, money and truck to Colotta. Whether this was only a slight or substantial deviation, and whether the degree of deviation removed Moon from the scope of his employment, on these facts and in the light of the above quoted principles, were questions of fact for the jury. Moreover, the jury was not obligated to accept all of Moon's testimony. It had the right to consider as unreasonable his statement that Colotta described to him in detail his route to Baird. It could also consider the facts that he had driven to his house in the truck on other occasions, and that Colotta did not testify that he did not know of such trips. Other relevant factors for the jury concerning Moon's credibility were his drunken condition shortly after the accident, and that he was still driving a truck for Colotta at the time of the trial. As was also stated in Southern Bell Telephone and Telegraph Co. v. Quick, supra, Moon's testimony was of such dubious nature and contained such elements of self-interest that the jury might well have been warranted in rejecting some or all of it concerning his mission when the accident occurred, the instructions of his master, and the knowledge of the master concerning his previous use of the truck for temporary stops at his home.

Bourgeois v. Miss. School Supply Co., 170 Miss. 310, 155 So. 209 (1934), is clearly distinguishable. That case involved a material and total departure for a considerable period of time, during which the company's truck driver drove home for lunch in Jackson, and then drove toward the residence of a fellow-employee for the purpose of picking him up and driving him back to the company's place of business. On the other hand, here

there is the question of the extent of the deviation by the servant from the strict course of his employment, which, as was said in the Quick case, depends "upon the degree of deviation and all the attendant circumstances." Moon's deviation was slight and not unusual, under the circumstances. It was during his hours of work in his master's truck, only momentary, and while he was on the route to his master's place of business. It was a question of fact for the jury as to whether this was such a slight deviation that he was still in the scope of employment, or whether it was such an entire departure as to remove him therefrom.

We have considered carefully the instructions, and when read all together, there was no reversible error concerning them.

Affirmed.

*Roberds, Hall, Lee, Arrington* and *Gillespie,* JJ., concur.

*McGehee,* C.J., dissenting.

It is to be conceded that when an employee makes a *slight* deviation from his course of travel for the purpose of performing some mission of his own, and which is in no manner in furtherance of the business of his employer, there may be liability on the part of the employer for the negligent act of the employee that may have caused injury to someone while the slight deviation is being made on such private mission. But in the instant case that which causes a difference of opinion among the judges is as to whether or not the deviation here was a substantial or a slight one. It is my view that when the employee Jessie Moon, after being within a block of the place of business of his employer and to which he was returning in the truck, deviated for a distance of 5 or 6 blocks via his home to ascertain what his wife wanted for supper, and injured the appellee before he had stopped the truck at the Moon home, he had made a substan-

tial deviation on a private mission of his own, and that consequently under the decision of the case of Bourgeois v. Mississippi School Supply Co., 170 Miss. 310, 155 So. 209, there would be no liability on the part of the employer.

It is no concern of the employer for the employee to completely depart from his course to the place of business in order to find out what his wife wanted for supper. I am unable to see how the act of the employee in going by his home for that purpose could have been in furtherance of the business of the employer, or in any manner related thereto.

In the Bourgeois case, supra, the Court did not overlook its prior decision in the case of Southern Bell Tel. & Tel. Co. v. Quick, 167 Miss. 438, 451, 149 So. 107, discussed in the majority opinion herein. On the contrary, the Court in the Bourgeois case distinguished the Quick case, and it seems to me that the Bourgeois case is applicable to the factual situation involved in the case at bar.

Moreover, we held in the case of Persons v. Stokes, (Miss.) 76 So. 2d 517, that where an employee halted his search for the employer's cows when a dog treed a squirrel, and a fellow employee shot the squirrel, and the employee was struck in the eye by a ricocheting shot, there was no liability on the part of the employer in favor of the employee, even under the liberal construction applied to the provisions of the Workmen's Compensation Act involved in that case, and this was true notwithstanding that squirrel-shooting on the job was condoned by the employer where it did not interfere with the general work in which the employee was engaged. The Court said: "He did not receive his injury at a time when he was fulfilling any of the duties of his employment, or at a time when he was engaged in doing something incidental thereto, or at a time when he was engaged in the furtherance of the employer's business. * * *".

If I could agree that the deviation in the instant case was a slight one, I would be in full accord with the majority opinion herein. For instance, if an employee should make a slight deviation from a highway to the front of a nearby grocery or drug store to get a cold drink or buy some cigarettes, or for a like purpose, such action would be reasonably anticipated by the employer and would only be a slight deviation, and the employer would be liable if the employee struck someone with his vehicle in driving up to the store. I dissent solely on the ground that in my version of the undisputed evidence here the employee in the instant case had made a substantial deviation from his journey back to the place of business of his employer, and on a mission strictly of his own and that therefore the employer should not be held liable for the employee's negligent act in running over a pedestrian before the truck had come to a stop at the employee's home, and consequently before he had resumed his act of returning to the place of business to which he was supposed to drive the truck.

*Holmes,* J., joins in this dissent.