**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 25 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN O'SHEA,

      Plaintiff-Appellant,

v.

ANTHONY J. WELCH,

      Defendant,

and

AMERICAN DRUG STORES, INC.,
doing business as Osco Drug,

      Defendant-Appellee,

FARMERS INSURANCE COMPANY,
INC.,

      Defendant-Intervenor.

No. 02-3343

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 01-CV-2336-JWL)**

Donald M. McLean (Benjamin M. Kieler and Michael L. Baumberger with him on
the briefs) of Hayes & Kieler, L.L.C., Overland Park, Kansas, for Plaintiff-
Appellant.

Danny L. Curtis of McDowell, Rice, Smith & Gaar, P.C., Kansas City, Missouri
(Suzanna L. Trower of McDowell, Rice, Smith & Gaar, P.C., Kansas City,
Missouri, and Dion J. Sartorio of Tressler, Soderstrom, Maloney & Priess,

Chicago, Illinois, with him on the brief), for Defendant-Appellee.

Before **HARTZ**, **HOLLOWAY**, and **McKAY**, Circuit Judges.

**McKAY**, Circuit Judge.

Appellant filed a claim in the district court for damages against Defendant Welch[1] based on negligence after Appellant sustained injuries when the car that he was driving was struck by a car driven by Mr. Welch. In his complaint, Appellant alleged that Mr. Welch, an Osco employee, was acting within the scope of his employment at the time of the accident. Appellant sought to hold Osco liable for damages under a theory of *respondeat superior*.

Appellant's version of the facts on summary judgment are as follows. At the time of the accident, Mr. Welch was an Osco store manager. He was driving from his store to the Osco District Office to deliver football tickets for that weekend which were obtained from a vendor for distribution among Osco managers. Mr. Welch frequently made trips for Osco using his own vehicle. During his drive, Mr. Welch remembered that he needed to have some routine maintenance done on his car. He made a spur of the moment decision to pull into

_____

[1]Mr. Welch is not a party to this appeal.

-2-

a service station for an estimate. Mr. Welch allegedly failed to yield in making a left turn and struck Appellant's car.

On cross-motions for summary judgment, the district court granted Osco's motion and denied Appellant's motion, holding that no reasonable jury could conclude that Mr. Welch was acting within the scope of his employment. The district court did not specifically decide whether the trip to the District Office was within Mr. Welch's scope of employment. Instead, the district court held that it did not matter because, even if the trip had been within the scope of Mr. Welch's employment, the attempted stop at the service station was not. The district court also denied Appellant's motion to reconsider or, in the alternative, to certify a question to the Kansas Supreme Court.

After Osco was dismissed from the case, a bench trial was held on the issue of damages. Defendant Welch did not present evidence or cross-examine witnesses. The court entered judgment against Mr. Welch in the amount of $1,014,503.70, "question[ing] whether it would arrive at the same result in a true adversary proceeding . . . ." Aplt. App., Vol. II, at 349.

The specific issue we are asked to address on appeal is whether the district court erred in granting summary judgment to Appellee Osco on whether Mr. Welch was within the scope of his employment when he turned into the service station for non-emergency maintenance on his car while driving to deliver a

vendor gift to the District Office.  We review "the grant of summary judgment *de novo*, applying the same standards used by the district court."  Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998).  A motion for summary judgment is granted when the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.

Pursuant to Kansas law, an employer is only liable for injuries caused by an employee acting within the scope of his employment.  Williams v. Community Drive-In Theater, Inc., 520 P.2d 1296, 1301-02 (1974).  The following Kansas jury instruction is an accurate illustration of Kansas scope of employment law:

> An employee is acting within the scope of [his employment] when [he] is performing services for which [he] has been [employed], or when [he] is doing anything which is reasonably incidental to [his employment].  The test is not necessarily whether this specific conduct was expressly authorized or forbidden by the employer[], but whether such conduct should have been fairly foreseen from the nature of the [employment] and the duties relating to it.

Pattern Instructions Kansas 3d 107.06; Williams, 520 P.2d at 1300. Unfortunately, there are no Kansas cases directly on point to help define the parameters of Kansas law.  Therefore, in its grant of summary judgment for Osco, the district court relied substantially on two cases from other jurisdictions.

In Carroll v. Western Union Telegraph Co., 17 P.2d 49 (Wash. 1932), a motorcycle messenger, not then being busy, informed his superior that he needed

to get a part for his motorcycle. Given permission, the messenger then proceeded on his motorcycle a considerable and indirect distance to complete his personal errand. He was not sent on an errand for his employer; he was excused temporarily from his post for his own private advantage. However, there was no deduction in pay. The accident occurred as the messenger was returning from his errand to go back to work. The court held that the employer was not liable for the tort of his employee because the messenger had been specifically excused from his job duties to run a personal errand. Id. at 50. The court specifically noted that cases where the employee was on an errand for the employer from which he deviated for personal reasons "have no bearing here, because [the messenger] was not sent out on any errand from the performance of which he deviated." Id.

Similarly, in Schofield v. Cox Enterprises, Inc., 441 S.E.2d 693 (Ga. Ct. App. 1994), a newspaper delivery person worked a morning and an afternoon shift, and the time between the shifts was personal, unpaid time. The delivery person had some unsold papers to return to his employer. Though not required to return the papers immediately, the employee planned to return the papers between shifts after he had his car's alignment fixed. The accident occurred at the service station when the car driven by the delivery person failed to stop and pinned a repair shop worker against the wall which resulted in the worker's death. The court held that the employer was not liable for the tort committed by his

employee.

We note that though the district court relied heavily on <u>Carroll</u> and <u>Schofield</u>, neither of these cases is from Kansas and, more importantly, neither is similar enough to ours on the facts. The district court focused on the nature of the errand of non-emergency maintenance to a vehicle used for work. However, in our case, Mr. Welch was arguably delivering tickets for Osco when he attempted to make a turn into a service station. In <u>Carroll</u> and <u>Schofield</u>, the employees were not on business errands from which they deviated for personal reasons. In <u>Carroll</u>, the messenger was on a lengthy personal errand across town that had nothing to do with his employment. In <u>Schofield</u>, the delivery person was not even working a shift – it was his personal, unpaid time. Therefore, neither of these cases in which off-duty employees committed torts while seeking to repair a vehicle used for work is helpful to our analysis.

Due to the absence of binding authority, Appellant urges us to decide that Kansas would adopt the "slight deviation" rule which it already follows in worker's compensation cases. Approximately half of the states[2], supported by

---

[2]<u>See</u>, <u>e.g.</u>, <u>Healey v. Cockrill</u>, 202 S.W. 229 (Ark. 1918); <u>Avila v. Standard Oil Co.</u>, 213 Cal. Rptr. 314 (Cal. Ct. App. 1985); <u>Gayton v. Pacific Fruit Express Co.</u>, 15 P.2d 217 (Cal. Ct. App. 1932); <u>Tanner v. Lambert Auto Elec. Co.</u>, 522 P.2d 130 (Colo. Ct. App. 1974); <u>Western Union Telegraph Co. v. Michel</u>, 163 So. 86 (Fla. 1935); <u>Parker v. Smith</u>, 18 S.E.2d 559 (Ga. Ct. App. 1942); <u>Van Vranken v. Fence-Craft</u>, 430 P.2d 488 (Idaho 1967); <u>Pyne v. Witmer</u>, 543 N.E.2d 1304 (Ill.
(continued...)

American Jurisprudence, have applied some form of the slight deviation analysis

in third-party liability cases. See 27 Am. Jur. 2d Employment Relationship § 466

(2000). Pursuant to this analysis,

>   it must be determined whether the employee was on a frolic or a
>   detour; the latter is a deviation that is sufficiently related to the
>   employment to fall within its scope, while the former is the pursuit of
>   the employee's personal business as a substantial deviation from or
>   an abandonment of the employment. If an employee wholly
>   abandons, even temporarily, the employer's business for personal
>   reasons, the act is not within the scope of employment, and the
>   employer is not liable under respondeat superior for the employee's
>   conduct during that lapse. A diversion from the strict performance of
>   a task is not an abandonment of responsibility and service to an
>   employer, unless the very character of the diversion severs the
>   employment relationship. Acts that are necessary to the comfort,
>   convenience, health, and welfare of the employee while at work are
>   not outside the scope of employment, if the conduct is not a
>   substantial deviation from the duties of employment.

---

[2](...continued)
1989); Sandman v. Hagan, 154 N.W.2d 113 (Iowa 1967); Dennes v. Jefferson
Meat Market, 14 S.W.2d 408 (Ky. 1929); Timmons v. Silman, 761 So.2d 507 (La.
2000); Karangelen v. Snyder, 391 A.2d 474 (Md. App. 1978); Nelson v. Nelson,
166 N.W.2d 70 (Minn. 1969); Colotta v. Phillips, 85 So.2d 574 (Miss. 1956);
Burger Chef Systems, Inc. v. Govro, 407 F.2d 921 (8th Cir. 1969)(Missouri);
Dafoe v. Grantski, 9 N.W.2d 488 (Neb. 1943); Regan v. Bellows, 200 N.Y.S.2d
575 (N.Y. App. Div. 1960); Bryan v. Bunis, 203 N.Y.S. 634 (N.Y. App. Div.
1924); Parrott v. Kantor, 6 S.E.2d 40 (N.C. 1939); Edwards v. Benedict, 70
N.E.2d 471(Ohio Ct. App. 1946); Brayton v. Carter, 163 P.2d 960 (Okla. 1945);
Ryan v. Western Pac. Ins. Co., 408 P.2d 84 (Or. 1965); Lindenmuth v. Steffy, 98
A.2d 242 (Pa. Super. Ct. 1953); Aldcroft v. Prudential Ins. Co. of Amer., 243
A.2d 115 (R.I. 1968); Hancock v. Aiken Mills, 185 S.E. 188 (S.C. 1936); Gulf
Refining Co. v. Texarkana & Ft. S. Ry. Co., 261 S.W. 169 (Tex. Civ. App. 1924);
Carter v. Bessey, 93 P.2d 490 (Utah 1939); Master Auto Serv. Corp. v. Bowden,
19 S.E.2d 679 (Va. 1942); Leuthold v. Goodman, 157 P.2d 326 (Wash. 1945).

Id. (footnotes omitted). Personal acts that are not far removed in time, distance, or purpose are deemed to be incidental to the employment. See, e.g., Restatement (Second) of Agency § 237 (1958). Our research has not revealed a single jurisdiction that has considered and rejected slight deviation analysis in third-party liability cases. Kansas has not had the occasion to consider the slight deviation analysis in such cases. However, it has adopted the analysis in worker's compensation cases. We must therefore determine whether Kansas would adopt the slight deviation analysis in cases such as ours to inform our judgment.

Appellant asserts that the Kansas Supreme Court would adopt and apply the slight deviation rule to find that Mr. Welch was within the scope of his employment with Osco when attempting the turn for an estimate on vehicle maintenance. Appellant further argues that the Kansas pattern jury instruction, *infra*, is itself a rejection of a bright-line rule and demands that an employee's acts be put into context in order to determine what is "reasonably incidental" to employment and what "conduct should have been fairly foreseen." Slight deviation analysis provides a framework for such an analysis. A slight deviation might be considered reasonably incidental to employment while a substantial deviation would not.

We agree that the Kansas jury instruction is compatible with slight

deviation analysis.[3] Of the jurisdictions that have adopted slight deviation analysis, several have jury instructions that are substantially similar to Kansas' jury instruction. For example, Mississippi's jury instruction provides:

> An [employee] is acting within the scope of his [employment] when he is performing services or work for which he has been hired or engaged, or when he is doing something reasonably incidental to such work. The question is not necessarily whether such conduct was expressly authorized or forbidden, but rather whether it could have been fairly foreseen from the nature of his work and the duties relating to it, and whether he acted, at least in part, in an effort to serve his employer.

Miss. Prac. Model Jury Instr. Civil § 4:4 (2002); see also Ark. Model Jury Instr., Civil AMI 703 (4th ed. 1999); 4 Minn. Prac. Jury Instr. Guides – Civil 30.15 (4th ed. 1999); N.Y. Pattern Jury Instr. – Civil 2:235 (2002). Mississippi's instruction is virtually identical to the Kansas instruction, and it coexists with slight deviation analysis. Colotta v. Phillips, 85 So.2d 574 (Miss. 1956).

---

[3]As a note, we agree with Appellant that application of the slight deviation analysis is not contrary to the Kansas cases cited by the district court. For example, in Hollinger v. Stormont Hosp. and Training School for Nurses, 578 P.2d 1121 (1978), the plaintiff was injured while delivering newspapers when a janitor played a practical joke on her. The court held that the employer was not liable for the injuries because "[p]laintiff's injuries were not caused by the act of purchasing or reading a newspaper but occurred when [the janitor] attempted to pull a newspaper out of the bag plaintiff was carrying." Id. at 1130. The court did not mention substantial deviation. However, it compared the janitor's conduct with "an assault by an employee . . . motivated entirely by personal reasons such as malice or spite or by a desire to accomplish some unlawful purpose." Id. at 1125. An application of substantial deviation would most likely have had the same outcome because the janitor's prank was a substantial deviation in terms of purpose.

Unfortunately, Kansas law does not provide specific guidance in the instant case. The only guidance is from a Kansas jury instruction. To make a specific and detailed list of all personal stops that are and are not acceptable would be contrary to the standard expressed in the jury instruction which embodies Kansas law. Application of the slight deviation analysis allows for more flexibility and accuracy in the application of the law to each fact scenario. The Kansas pattern jury instruction, similar to the instructions cited above from other jurisdictions, does not express a bright-line rule but instead illustrates a type of slight deviation rule which requires a determination of what is reasonably incidental to employment and what conduct should have been fairly foreseen.

Additionally, Kansas has already adopted the slight deviation analysis in worker's compensation cases. We agree with Appellee that, even though an employee's acts may be deemed within the scope of his employment under the Kansas Workers Compensation Act, such acts are not necessarily within the scope of his employment where the issue is whether his employer is vicariously liable to a third party. We also agree that the public policies behind worker's compensation and third party liability cases are different. However, it supports our analysis that Kansas has considered and adopted slight deviation analysis in at least one area of the law.

Applying slight deviation analysis to our case, we think that the question of

whether the turn was within Mr. Welch's scope of employment is for the jury to decide. Whether an employee is acting within the scope of his employment is generally a jury question. Birkner v. Salt Lake County, 771 P.2d 1053, 1057 (Utah 1989). "[W]henever reasonable minds may differ as to whether the [employee] was at a certain time involved wholly or partly in the performance of his master's business or within the scope of his employment," it is a jury question. Id. (internal quotations and citations omitted); see also Bacon v. News-Press & Gazette Co., 373 S.E.2d 797, 799 (Ga. Ct. App. 1988) (quoting Jump v. Anderson, 197 S.E. 644 (Ga. Ct. App. 1938) ("[W]hether or not the servant at the time of an injury to another was acting . . . in the scope of his employment is for determination by the jury, except in plain and indisputable cases."). The rule has been stated that

> [w]hether there has been a deviation so material or substantial as to constitute a complete departure is usually a question of fact. In some cases the deviation may be so marked, and in others so slight relatively, that the court can say that no conclusion other than that the act was or was not a departure could reasonably be supported; while in still others the deviation may be so uncertain in extent and degree in view of the facts and circumstances as to make the question of what inferences should be drawn from the evidence properly one for the jury.

Kruse v. White Bros., 253 P. 178, 181 (Cal. Ct. App. 1927) (citing Healey v. Cockrill, 202 S.W. 229, 230 (Ark. 1918)); see also Pyne v. Witmer, 543 N.E.2d 1304, 1309 (Ill. 1989) ("[W]here a deviation is uncertain in extent and degree, or

-11-

where the surrounding facts and circumstances leave room for legitimate inferences as to whether, despite the deviation, the employee was still engaged in the employer's business, the question is for the jury.").

Mindful of the volume of authority which indicates that scope of employment is generally a jury question, we turn to the parameters of slight deviation analysis. The scope of slight deviation analysis has been defined as follows:

> To exonerate the master, however, it is essential that the deviation be for purposes entirely personal to the servant (39 Corp. Jur., p. 1297, Master and Servant, §§ 1493, 1494); and a deviation will be regarded as immaterial if the latter combines his own business with that of the master or attends to both at substantially the same time (Brimberry v. Dudfield Lumber Co., 183 Cal. 454, 191 P. 894). A mere deviation from the strict course of his duty does not release the master from liability. In order to have that effect it must be so substantial as to amount to an entire departure. 39 Corp. Jur. p. 1297, Master and Servant, § 1493.

Kruse, 253 P. at 181; see also Phillips Petroleum Co. v. Ward, 74 P.2d 614, 617 (Okla. 1937). Additionally,

> [a] mere deviation by an employee from the strict course of his duty does not release his employer from liability. An employee does not cease to be acting within the course of his employment because of an incidental personal act, or by slight deflections for a personal or private purpose, if his main purpose is still to carry on the business of his employer. Such deviations which do not amount to a turning aside completely from the employer's business, so as to be inconsistent with its pursuit, are often reasonably expected and the employer's assent may be fairly assumed. In many instances they are the mingling of a personal purpose with the pursuit of the employer's business. In order to release an employer from liability, the

-12-

deviation must be so material or substantial as to amount to an entire departure.

Di Mirjian v. Ideal Heating Corp., 278 P.2d 114, 118 (Cal. Ct. App. 1954); see also Pyne, 543 N.E.2d at 1309.  Dual purpose ventures may be considered within the scope of an employee's employment.  Felix v. Asai, 237 Cal. Rptr. 718, 722 (Cal Ct. App. 1987) ("Where the employee may be deemed to be pursuing a business errand and a personal objective simultaneously, he will still be acting within the scope of his employment.").

Appellant argues that Mr. Welch was acting within the scope of his employment and made only a slight deviation from his business-related trip at the time the accident occurred.   Several factors have been identified as helpful in determining whether an employee has embarked on a slight or substantial deviation.  They include: (1) the employee's intent; (2) the nature, time, and place of the deviation; (3) the time consumed in the deviation; (4) the work for which the employee was hired; (5) the incidental acts reasonably expected by the employer; and (6) the freedom allowed the employee in performing his job responsibilities.  Felix, 237 Cal. Rptr. at 722.

Applying these factors to our case, and viewing the facts in a light most favorable to Appellant, Mr. Welch intended to get an estimate for non-emergency maintenance on a car used for business.  In terms of purpose, it was maintenance to a vehicle used regularly in performing his job duties for Osco.  While his stop

was not for emergency maintenance for his car, his stop for routine maintenance on a car used for business purposes could be considered enough of a mixed purpose by a jury to keep him within the scope of his employment with Osco.

In terms of time and place, the accident occurred minutes and feet from the direct route to Osco's District Office. Mr. Welch was simply attempting to turn from the most direct route into a service station right off the main road. At the time of the accident, he had not entered the service station. He was technically still on the road en route to the District Office. Because the accident occurred on this road, not at the service station, a jury could decide that Mr. Welch had not yet abandoned his employment for a personal errand at the time of the accident. It is unclear how long the estimate would have taken. However, we do know that if he had deviated at the time of the accident, the length of the deviation was only a few minutes or less.

Mr. Welch was an Osco store manager. A jury could find that an employee in a managerial position was given some freedom to attend to certain personal needs throughout the day. It is possible that Osco reasonably expected certain incidental acts to take place, especially when a store manager was en route from one store to another or from a store to the District Office.

Our case is similar to Van Vranken v. Fence-Craft, 430 P.2d 488 (Idaho 1967), where the employee deviated from his direct route to drop off a

-14-

prescription for his wife. The court held that "a proportionately slight or expectable deviation will not relieve an employer of vicarious liability, and except where the deviation is gross, the jury should determine the scope of employment question as one of fact." Id. at 495. A reasonable jury could decide that "deviation from the direct route was [something] which the employer might reasonably be deemed to have anticipated and assented to, and was not such as to amount to an abandonment of the employment." Kruse, 253 P. at 181.

Assuming without deciding that Mr. Welch was acting within the scope of his employment in delivering the tickets to the District Office, we hold that a reasonable jury could conclude that he was acting within the scope of his employment when he attempted to turn into the service station. A reasonable jury could decide that Mr. Welch's attempted deviation from his direct route to obtain non-emergency vehicle maintenance was something which Osco "might reasonably be deemed to have anticipated and assented to, and was not such as to amount to an abandonment of the employment." Id.

The district court did not specifically decide whether Mr. Welch was in the scope of his employment in making the trip from his store to the District Office. It stated:

> [W]hile the court would conclude from the record that genuine issues
> of material fact exist with respect to whether defendant Welch's
> delivery of the Chiefs tickets was within the scope of his
> employment, the court need not address this issue because it

-15-

concludes that, as a matter of law, defendant Welch's attempted stop at the service station for routine vehicle maintenance was outside the scope of his employment.

Aplt. App., Vol. II, at 311. We agree with the district court that summary judgment is inappropriate on this issue. Therefore, this issue must be remanded for trial as well.

We further hold that, in the event that Appellee is found liable by a jury, it will have the opportunity to contest damages as it was not involved in the damages hearing.

**REVERSED** and **REMANDED.**