(251 P.3d 640)
No. 103,456

Donald Wayman, *Appellant,* v. Accor North America, Inc., d/b/a Motel 6, and Frederick Ristow, *Appellees.*

Opinion filed March 18, 2011.

*Matthew L. Bretz* and *Melinda G. Young*, of Bretz Law Offices, LLC, of Hutchinson, for appellant.

*Curtis L. Tideman, David R. Frye*, and *Matthew K. Corbin*, of Lathrop & Gage LLP, of Overland Park, for appellee Accor North America, Inc.

Before MALONE, P.J., MARQUARDT and LEBEN, JJ.

MALONE, J.: Donald Wayman was a guest at the Motel 6 in Manhattan, Kansas, when he was struck and injured by a car driven by the motel general manager, Frederick Ristow, who was intoxicated. Wayman filed a lawsuit against Ristow individually and Accor North America, Inc., d/b/a Motel 6 (Accor), claiming (1) Accor was vicariously liable for Ristow's negligent behavior and (2) Accor

negligently hired, retained, and supervised Ristow. The district court granted summary judgment in favor of Accor on both claims. Wayman obtained a judgment against Ristow and timely appealed the district court's decision granting summary judgment in favor of Accor. For the reasons set forth herein, we affirm the judgment of the district court.

In May 2005, Accor employed Ristow as the general manager of the Motel 6 in Manhattan, Kansas. Ristow had been employed as a Motel 6 general manager at various locations throughout the United States since 1989. He had been general manager at the Motel 6 in Manhattan since 1998. As part of his compensation, Ristow lived at the motel where he was on call 24 hours per day to handle emergency situations. On most workdays, Ristow worked in the motel office from 6 a.m. until approximately 2:30 p.m. He would then usually go to the bank to deposit cash receipts for the motel. After finishing at the bank, Ristow usually stopped at Mel's Tavern in Manhattan to eat and have a couple of drinks, and he usually returned to the motel by 5 p.m.

On May 23, 2005, Ristow did not follow his usual workday schedule. Ristow arrived at the motel around 1:30 p.m. after being in Nebraska to visit family members. After asking the manager on duty to stay so he could get something to eat, Ristow left the motel and went to Mel's Tavern where he stayed until approximately 8 p.m. drinking alcohol. Ristow did not go to the bank that day or perform any other regular workday duties. Although Ristow understood that he was on call if the manager on duty needed help at the motel, he did not receive any phone calls that day about problems at the motel.

At approximately 8 p.m., Ristow left Mel's Tavern and drove back to the motel. As Ristow was pulling into a parking stall, his vehicle jumped the curb and struck Wayman, a guest at the motel, who was standing near the doorway of his room. Wayman sustained serious personal injuries. Officer Dale Rice of the Pottawatomie County Sheriff's Office investigated the accident and arrested Ristow for driving under the influence of alcohol. Ristow later admitted that he was intoxicated at the time of the accident. Within a week of the accident, Accor fired Ristow.

On August 11, 2006, Wayman filed a lawsuit against Accor alleging that Accor was both vicariously liable as Ristow's employer and directly negligent in failing to protect Wayman from Ristow's negligent behavior. Ristow was later named as a party to the lawsuit. In the pretrial conference order, Wayman's claim against Ristow was based on negligence. However, the district court subsequently granted Wayman's motion to add a claim for punitive damages against Ristow based on his "wanton" conduct of driving a vehicle under the influence of alcohol.

On January 2, 2008, Accor filed a motion for summary judgment. Accor's motion claimed that Ristow was not on duty while he was drinking at Mel's Tavern; therefore, Accor was not vicariously liable for Ristow's negligence. Accor also requested summary judgment on Wayman's claim that Accor negligently hired, retained, and supervised Ristow. On May 27, 2008, the district court filed a memorandum decision that denied the motion for summary judgment on the vicarious liability claim but granted summary judgment in favor of Accor on the claim of negligent hiring, retention, and supervision. On the vicarious liability claim, the district court found that the central question was whether Ristow was on duty and therefore within the scope of his employment when he was on call for the motel, and the district court found that whether Ristow was on call was a question of fact.

On February 18, 2009, Accor asked the district court to reconsider the previous summary judgment ruling on the issue of vicarious liability, and the district court subsequently invited the parties to file additional authority. On May 15, 2009, the district court issued a memorandum decision. Based upon the summary judgment pleadings, the district court determined the uncontroverted material facts to be as follows:

"1. Ristow was the General Manager for the Motel 6 in Manhattan, Pottawatomie County, Kansas, in May 2005.

"2. Ristow was required to live on the Motel 6 premises while working as General Manager.

"3. Wayman was a customer of Motel 6 on May 23, 2005.

"4. As an additional condition of his employment, Ristow was required to have a driver's license so that he could run errands for his employer from time to time, which he, in fact, did from time to time.

"5. Ristow was required by his employer, Accor, which does business as Motel 6, to be in Manhattan, Kansas by 2:00 p.m. on May 23, 2005, at which time he was to be 'on call'. Ristow arrived at the Motel 6, at approximately 1:30 p.m. and was 'on call' from that point on.

"6. Being 'on call' required Ristow to be available 24 hours a day for any emergency situations that may arise at Motel 6.

"7. Shortly after returning to Manhattan, Kansas, Ristow drove to a tavern in Manhattan.

"8. Ristow went to the tavern for purely personal reason[s], and was not 'called' to respond to any emergency situation at Motel 6 while there.

"9. Ristow was at the tavern, consuming alcohol, from approximately 2:00 p.m. - 8:00 p.m.

"10. When Ristow left the tavern he returned to the Motel 6, where he struck plaintiff with his automobile when pulling in to a parking stall.

"11. Ristow admits he was under the influence of alcohol at the time of the accident and pled guilty to driving under the influence of alcohol."

Based upon the uncontroverted facts, the district court determined that "only one reasonable conclusion can be drawn" from the evidence on the issue of vicarious liability. The district court found that Ristow was not "acting within the scope of his employment or doing anything reasonably incidental to the same" when he went to the tavern to drink and injured Wayman on his return. Accordingly, the district court granted Accor's motion for summary judgment on the issue of vicarious liability and reaffirmed the summary judgment in favor of Accor on the issue of negligent hiring, retention, and supervision.

Ristow ultimately admitted liability on Wayman's negligence claim in exchange for Wayman dismissing his claim for punitive damages. The case proceeded to a bench trial on the issue of damages. After reviewing documentary evidence submitted by both parties, the district court granted judgment in favor of Wayman against Ristow in the amount of $645,004.52. Wayman timely appealed the district court's decision granting summary judgment in favor of Accor.

Wayman raises two issues on appeal. First, Wayman claims the district court erred by granting summary judgment in favor of Accor on Wayman's claim that Accor was vicariously liable for Ristow's negligent behavior. Second, Wayman claims the district court

erred by granting summary judgment in favor of Accor on Wayman's claim of negligent hiring, retention, and supervision.

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009).

## VICARIOUS LIABILITY CLAIM

On appeal, Wayman argues that the district court erred by granting Accor's motion for summary judgment on his claim of vicarious liability. Specifically, Wayman argues that whether Ristow was in the scope of his employment at the time of the accident is a question of fact which must be determined by a jury, not disposed of on summary judgment. Further, Wayman argues that a jury could conclude that Ristow's on-call status established that he was in the scope of his employment when the accident occurred. Finally, Wayman argues that because Ristow's employer required him to live at the motel, everything he did at the motel was within the scope of his employment; therefore, summary judgment was in error.

As stated above, there were two decisions by the district court on Accor's motion for summary judgment regarding Wayman's claim of vicarious liability. The first decision denied Accor's motion. The second reconsidered and granted the motion. The district court's first decision denying Accor's motion for summary judgment seemed to be based on the court's conclusion that whether

Ristow's on-call status placed his actions within the scope of his employment was a disputed question of fact. However, both Accor and Wayman agreed that Ristow was on call after 2 p.m. the day of the accident. On the motion for reconsideration, the district court adopted the uncontroverted fact that Ristow was on call at the time of the accident. The district court then proceeded to analyze the effect of the on-call status on vicarious liability and ultimately granted summary judgment in favor of Accor.

Accor does not deny that Ristow was employed as the general manager of the Motel 6 in Manhattan, Kansas, on May 23, 2005. The ultimate question in this case is whether Ristow was acting within the scope of his employment for purposes of vicarious liability when he injured Wayman. The Kansas Supreme Court has stated:

"[A]n employee is acting within the scope of the employment if the employee is performing services for which the employee has been employed or is doing anything reasonably incidental to the employment. The test is not necessarily whether the specific conduct was expressly authorized or forbidden by the employer, but whether such conduct should have been fairly foreseen from the nature of the employment and the duties relating to it." *Commerce Bank of St. Joseph v. State,* 251 Kan. 207, 210, 833 P.2d 996 (1992).

A landmark Kansas case addressing scope of employment is *Williams v. Community Drive-in Theatre, Inc.,* 214 Kan. 359, 520 P.2d 1296 (1974). In *Williams,* an employee of a corporate drive-in theatre shot and injured a theatre patron who the employee thought was threatening the theatre's assistant manager. According to the employee, the gun discharged accidentally. The injured plaintiff filed an action against the corporate drive-in theatre and the employee. The district court granted summary judgment to the employer, finding that the employee was not acting within the scope of her employment when she used a shotgun to confront the theatre patron.

On appeal, the Kansas Supreme Court reversed and remanded for a trial. The court noted the general rule that an employee is acting within the scope of employment when the employee is performing services for which the employee has been employed, or when the employee is doing anything reasonably incidental to the

employment. 214 Kan. at 364. The court further stated that the liability of an employer for the acts of an employee depends not upon whether the injurious act of the employee was willful and intentional or was unintentional, but upon whether the employee, when he or she did the wrong, was acting in the prosecution of the employer's business and within the scope of his or her authority, or had stepped aside from that business and done an individual wrong. The court concluded that an employer is liable for the reckless, willful, intentional, wanton, or malicious acts of an employee as well as for heedless and careless acts if they are committed while the employee is acting in the execution of his or her authority and within the course of his or her employment, or with a view to the furtherance of the employer's business, and not for a purpose personal to the employee. 214 Kan. at 366.

Wayman initially asserts that the question of whether an employee is acting within the scope of his or her employment is always a jury question. To support this contention, Wayman cites *O'Shea v. Welch*, 350 F.3d 1101 (10th Cir. 2003). In *O'Shea*, an Osco store manager was driving his personal vehicle from his store to the district office to deliver football tickets he had obtained from a vendor. While turning into a service station to obtain an estimate on necessary vehicle maintenance, the manager failed to yield the right-of-way and struck the plaintiff's car. The plaintiff filed suit against both the manager and Osco, claiming the manager's action was within the scope of his employment and therefore Osco was vicariously liable for the manager's negligence. Osco filed a motion for summary judgment, which the federal district court granted, "holding that no reasonable jury could conclude that [the manager] was acting within the scope of his employment." 350 F.3d at 1103.

On appeal, the Tenth Circuit Court of Appeals noted the absence of Kansas cases directly on point. Based on Kansas jury instructions, the Tenth Circuit determined that while an employee's substantial deviation from his or her employer's business would absolve the employer from liability during that lapse, an employee's slight or incidental deviation from his or her employer's business would not absolve the employer from vicarious liability. 350 F.3d at 1105-06. The court pointed to several cases from other jurisdic-

tions, holding that whether an employee is acting within the scope of his or her employment is generally a jury question. 350 F.3d at 1106-07. Ultimately, the court held that, under the facts of the case, the question of whether the manager's turn into the service station was within the scope of employment was a question that should have been left for determination by the jury. 350 F.3d at 1108-09.

Despite Wayman's assertion that whether an employee is acting within the scope of employment is always a jury question, the *O'Shea* court actually stated that "[w]hether an employee is acting within the scope of his employment is *generally* a jury question." (Emphasis added.) 350 F.3d at 1106. This statement is consistent with Kansas law generally on when a question of fact can be resolved by the court as a matter of law. See *Hale v. Brown*, 287 Kan. 320, 324, 197 P.3d 438 (2008) ("[P]roximate cause is ordinarily a question of fact that is reserved for the trier of fact. . . . [however,] when all the evidence on which a party relies is undisputed and susceptible of only one inference, the question of proximate cause becomes a question of law. [Citation omitted.]"); *Prugue v. Monley*, 29 Kan. App. 2d 635, 641-42, 28 P.3d 1046 (2001) (affirming summary judgment in favor of employer on vicarious liability claim where "the facts simply do not indicate that [the activity in question] was within the scope of [the employee's] employment" and the employee's behavior benefitted only himself).We conclude that whether an employee is acting within the scope of his or her employment is generally a question of fact, but if only one reasonable conclusion can be drawn from the evidence, the court can decide the issue as a matter of law.

Next, Wayman argues that Ristow's on-call status at the time of the collision established a factual basis from which a jury could conclude that Ristow was in the scope of his employment at the time of the accident. There are no Kansas cases addressing whether the on-call status of an employee renders his or her actions to be within the scope of employment for purposes of vicarious liability. The district court found guidance from other jurisdictions. First, the district court cited *Johnson v. Daily News*, 34 N.Y.2d 33, 356 N.Y.S.2d 1, 312 N.E.2d 148 (1974). In *Johnson*, a newspaper re-

porter was driving his own vehicle on a regularly scheduled day off from work when he was involved in an accident. The reporter's work required him to be "on call at all times in the event of emergency news matters," but he had not been called to work at the time of the accident. 34 N.Y.2d at 35. The other party to the accident filed a lawsuit against both the reporter and his employer, under a theory of respondeat superior. Finding that the district court erred in denying summary judgment in favor of the employer, the Court of Appeals of New York noted that the reporter was not driving his vehicle in any project for or because of any obligation to his employer. 34 N.Y.2d at 35. The court further stated:

"To hold that by being subject to call in case of an emergent need for his services would subject the [employer] to liability at a time when the employee was engaged in his own affairs on a regular day off from work, would be patently beyond the scope of the doctrine of respondeat superior." 34 N.Y.2d at 36.

The district court also cited *Le Elder v. Rice*, 21 Cal. App. 4th 1604, 26 Cal. Rptr. 2d 749 (1994). In *Le Elder*, the California Court of Appeals examined the case of a regional manager whose job required him to be available for work 24 hours a day, 7 days a week. The manager was involved in a car accident after dropping his children off at school. The manager later testified that he intended to make a business call from his home, but that he did not intend to make that call for over an hour. The other party involved in the accident filed suit, claiming that "an employer should automatically incur respondeat superior liability when the conditions of employment require on-call availability of the employee." 21 Cal. App. 4th at 1607.

The California court rejected this argument in light of the personal nature of the manager's activity of taking his children to school. Noting that technological advances have enlarged on-call accessibility, the California court addressed the public policy argument against allowing vicarious liability:

"Respondeat superior is imposed for three policy reasons: '(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury.' [Citation omit-

ted.] None of these goals would be legitimately accomplished by a rule establishing automatic 24-hour employer liability for 24-hour on-call employees. First, employer liability would not prevent a recurrence of the tortious conduct because an employer has no right to control the purely personal conduct of an employee. Second, although the deep pocket of an employer might give greater assurance of compensation for the victim, that desired economic end would be achieved inequitably because the victim's losses would not be borne by the person who benefitted from the injury-producing activity." 21 Cal. App. 4th at 1609-10.

Finally, the district court cited *Clickner v. Lowell; Waterman*, 422 Mass. 539, 663 N.E.2d 852 (1996). In *Clickner*, the plaintiffs were involved in an automobile accident with a police officer. The officer had spent the day drinking and playing golf. The officer was intoxicated and driving a city-owned vehicle to his scheduled shift when he received a page from the police station. As the officer attempted to respond to the page, he crossed the centerline of the road and collided with the plaintiffs' car. At the time of the accident, the officer was on call, but not yet on duty. 422 Mass. at 542-43.

In finding that the police officer was not within the scope of employment at the time of the accident, the Supreme Judicial Court of Massachusetts noted that "[m]ost jurisdictions have ruled that the mere fact of being on call does not place employees within the scope of their employment." 422 Mass. at 543. Further, the court reiterated that the officer's actions during the day of the accident "were in the furtherance of his own agenda." 422 Mass. at 543. The court found that the mere fact that, just prior to the accident, the officer was attempting to respond to a page from the police station did not " 'transmute his entire course of conduct into the kind of work which he was employed to perform.' " 422 Mass. at 543-44.

Returning to our facts, Ristow was on call when the accident occurred, but he had not performed any work-related duties that day other than telling the motel manager on duty that he was back in town. Ristow spent the day drinking at Mel's Tavern. He did not work at the desk, make his daily bank deposit, or perform any other activities of a normal workday. Ristow was not responding to an emergency call, nor was he on his way to start a regularly sched-

uled shift at the time of the accident. The rationale of *Clickner, Le Elder,* and *Johnson* supports the district court's conclusion that Ristow's on-call status did not cause him to be within the scope of his employment when he injured Wayman.

One important distinction between the cases relied upon by the district court to grant summary judgment and this case is that Wayman was a Motel 6 guest and the accident occurred on motel property where Ristow was required to live as a condition of his employment. This leads to Wayman's next argument that the requirement for Ristow to live at the motel subjects Accor to vicarious liability for Ristow's negligence. Essentially, Wayman argues that Accor is vicariously liable for any injury caused by Ristow while on motel property because Ristow was required to live on the property as a condition of his employment. Ristow acknowledges there are no Kansas cases supporting his argument. He cites two out-of-state workers compensation cases imposing liability on an employer when an employee is required to live on the business premises. *Ray Bell Construction Company v. King,* 277 Ga. App. 144, 625 S.E.2d 541 (2006) (applying the "traveling employee doctrine" to impose liability on the employer); *Pearson v. Fruit Farm,* 18 Ohio App. 2d 193, 248 N.E.2d 231 (1969) (applying the "bunkhouse rule" to impose liability on the employer).

As the district court observed, courts have repeatedly noted the distinction between workers compensation law and the theory of vicarious liability. See, *e.g., O'Shea,* 350 F.3d at 1106 ("We also agree that the public policies behind worker's compensation and third party liability cases are different."); *Garcia v. Estate of Arribas,* 363 F. Supp. 2d 1309, 1318 (D. Kan. 2005) ("[W]orkers compensation laws, . . . are quite different, in many respects, from the laws pertaining to the liability of employers to third parties."); *Stokes v. Denver Newspaper Agency, LLP,* 159 P.3d 691, 693-95 (Colo. App. 2006) (discussing differences between respondeat superior and workers compensation theories of recovery); *Salt Lake City Corp. v. Labor Com'n,* 153 P.3d 179, 182 (Utah 2007) (" 'With very different presumptions governing worker's compensation and negligence cases, it would not be wise to hold that the rules governing scope of employment questions in one area are

wholly applicable to the other.' "). We agree with the district court that the analysis of an employer's liability under workers compensation law is inapplicable to the theory of vicarious liability.

Wayman has cited no other authority to justify this court imposing blanket liability on an employer for any injury on business property caused by an employee who is required to live on the property as a condition of employment. Ristow was completing a personal errand of drinking for approximately 6 hours at Mel's Tavern when he returned to the motel and struck Wayman with his vehicle. If Ristow had been on his way to fix a leaky faucet or to perform any other work-related activity when he injured Wayman, Accor's vicarious liability for the injury would be readily apparent. But in order for Accor to be vicariously liable for Ristow's conduct, Ristow must have been attempting to perform some act with a view to the furtherance of Accor's business at the time of the accident. See *Williams,* 214 Kan. at 366. If Ristow had injured Wayman while backing out of a parking stall on his way to Mel's Tavern for a day of drinking, such conduct would not have been within the scope of Ristow's employment just because the injury occurred on motel property. Likewise, Ristow was not within the scope of his employment when he returned from his 6-hour drinking excursion just because he made it back to the parking lot and was on motel property when the accident occurred.

The Kansas Supreme Court has stated that "the modern rationale for vicarious liability is the enterprise justification concept . . . . Under such a justification, the losses caused by an employee's tort are placed on the enterprise as a cost of doing business and on the employer for having engaged in the enterprise." *Bright v. Cargill, Inc.,* 251 Kan. 387, 407, 837 P.2d 348 (1992). Imposing vicarious liability on an employer for the negligent acts of an employee merely because the employee is on call does not serve this justification. Likewise, imposing blanket liability on an employer for any injury on business property caused by an employee who is required to live on the property as a condition of employment does not serve the enterprise justification concept for vicarious liability, unless the employee is performing services for which the employee has been

employed or is doing anything reasonably incidental to the employment at the time of the injury.

Summary judgment is to be granted with caution in negligence actions. *Fettke v. City of Wichita*, 264 Kan. 629, 632, 957 P.2d 409 (1998). Nevertheless, a district court may grant a summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Shamberg*, 289 Kan. at 900. Here, the uncontroverted facts established that Ristow had not performed any act in furtherance of his employer's business the entire day of the accident. He was returning from a purely personal 6-hour drinking excursion at Mel's Tavern. He had not been called to respond to any emergency at the motel. Even though Ristow made it back to the motel parking lot where the accident occurred, he was not performing any work-related activity at the time he injured Wayman.

Applying the Kansas test for whether an employee is acting within the scope of his or her employment, the uncontroverted facts establish that Ristow was not performing services for which he had been employed or doing anything reasonably incidental to his employment at the time he injured Wayman. *Commerce Bank*, 251 Kan. at 210. Although Accor would be liable for Ristow's wanton conduct if he had acted with a view to the furtherance of Accor's business, in this instance Ristow had stepped aside from that business and committed an individual wrong for a purpose personal to Ristow. See *Williams*, 214 Kan. at 366. We conclude the district court correctly found as a matter of law that Ristow was not acting within the scope of his employment when he injured Wayman. Therefore, the district court did not err by granting summary judgment in favor of Accor on the issue of vicarious liability.

## NEGLIGENT HIRING, RETENTION, AND SUPERVISION

Wayman also claims the district court erred by granting summary judgment in favor of Accor on Wayman's claim of negligent hiring, retention, and supervision. Although the analysis of each claim is similar, Kansas law recognizes negligent supervision as a separate and distinct theory in addition to theories of negligent hiring and negligent retention. See *Marquis v. State Farm Fire &*

*Cas. Co.*, 265 Kan. 317, 331, 961 P.2d 1213 (1998). Therefore, we will discuss the claims separately.

## Negligent Hiring and Retention

"In order to find an employer liable for negligently hiring or retaining an employee . . . the employer must, by virtue of knowledge of the employee's particular quality or propensity, have reason to believe that an undue risk of harm exists to others as a result of continued employment of that employee; and the harm which results must be within the risk created by the known propensity." *Schmidt v. HTG, Inc.*, 265 Kan. 372, Syl. ¶ 10, 961 P.2d 677 (1998).

The district court granted summary judgment in favor of Accor on Wayman's claim of negligent hiring, retention, and supervision in its memorandum decision filed on May 27, 2008. Based upon the summary judgment pleadings, the district court determined the uncontroverted material facts relative to this issue to be as follows:

"15. Ristow was never disciplined before the date of the automobile accident for alcohol use at any place of employment.

"16. Ristow had never spent four or six hours at Mel's Tavern and returned to Motel 6 before the date of the accident.

"17. Ristow denies he has a drinking problem.

"18. Ristow never discussed a possible drinking problem with any Accor North America representative before the date of the accident.

"19. Before the date of the accident, Ristow had never caused injury to anyone while driving under the influence of alcohol.

"20. Tawnya Redwine, Manager on Duty, does not know of any instances before the date of the accident in which Ristow caused harm to someone after getting in a motor vehicle.

"21. Tawnya Redwine knows of no reason why Accor North America might have known Ristow could foreseeably have caused harm to Plaintiff on the date of the accident.

"22. J.R. Bishop, Area Manager at the time of the accident, testified he was unaware of any other instances where Motel 6's General Managers had been found to be intoxicated.

"23. J.R. Bishop testified he has never been told of any General Managers at Motel 6 nationwide that had been found to be intoxicated before May 2005.

"24. Rick Johnson, former Area Manager, knew of no reason why he should discuss Ristow's use of alcohol or driving under the influence of alcohol with Ristow.

"25. Jerome Parker, former Area Manager, is unaware of any time that Ristow was intoxicated at Motel 6 while he was the area Manager."

Wayman argues that whether Accor knew of Ristow's habit of drinking on a daily basis at Mel's Tavern was a controverted question of fact that should have been left for the jury to decide, not disposed of on summary judgment. Wayman bases this claim almost entirely on one statement made by Ristow during a deposition:

"Q. Do you have any reason to believe that anyone at corporate, anyone at all, would know of your preferred habit of going to Mel's and having bourbons and waters after you ended a shift?

"A. I would say every area manager I ever had knew that.

"Q. Why do you say that?

"A. Because I always took that break from two to five every afternoon."

During that same deposition, however, Accor's attorney asked Ristow whether his current area manager, J.R. Bishop, knew that he liked bourbon and water, and Ristow replied, "I don't know. The man doesn't drink, so I never saw him in a bar. I don't know." Ristow further stated that he did not know of any occasion when Bishop knew he drank alcohol after a shift, and Ristow was unable to identify anyone at Motel 6 who knew of his habit to go to Mel's Tavern and drink bourbon and water. Upon review of the record as a whole, it is clear that Ristow's area managers may have known about his daily habit of taking an afternoon break, but they did not have specific knowledge of Ristow's daily drinking habit or any lack of fitness on his part to perform his job. When the undisputed evidence is considered as a whole, no reasonable inference can be made that Accor knew or should have known that Ristow's drinking created an undue risk of harm.

Wayman further asserts that Accor had knowledge of the risk Ristow posed because Ristow drank alcohol with other Accor managers after monthly "area meetings." As Accor argues, however, the fact that Ristow consumed alcohol with other managers is not enough to show negligent hiring or retention. There is no evidence that Accor knew or should have known of Ristow's alleged propensity to drink and drive in an unsafe manner. Even if Accor was aware that Ristow drank with other area managers after monthly meetings, this does not reasonably lead to the inference that Ristow was unfit, incompetent, or posed a risk to others. Resolving all facts

and inferences which may reasonably be drawn from the evidence in favor of Wayman, the district court did not err by granting summary judgment in favor of Accor with respect to Wayman's claim of negligent hiring and retention.

*Negligent Supervision*

"Kansas law recognizes negligent supervision as a separate and distinct theory in addition to theories of negligent hiring and negligent retention. [Citations omitted.] Negligent supervision includes not only the failure to supervise but also the failure to control persons with whom the defendant has a special relationship, including the defendant's employees or persons with dangerous propensities. [Citations omitted.]" *Marquis*, 265 Kan. at 331.

Negligent supervision liability requires that the employer had reason to believe that the employment of the employee would result in an undue risk of harm to others. *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 362, 819 P.2d 587 (1991). Here, under the same analysis stated above for negligent hiring and retention, Wayman failed to submit any evidence that Accor knew or should have known that Ristow had the propensity to become intoxicated. Thus, Accor had no reason to believe Ristow's employment would result in an undue risk of harm to others or that Accor needed to take any special steps to properly supervise or control Ristow's conduct. Therefore, the district court did not err by granting summary judgment in favor of Accor with respect to Wayman's claim of negligent supervision.

Finally, Wayman briefly asserts that Accor breached the duty of reasonable care owed by an occupier of land to invitees and licensees. To support this argument, Wayman essentially reiterates his arguments for negligent hiring, retention, and supervision. A point raised incidentally in a brief and not argued there is deemed abandoned. *Cooke v. Gillespie*, 285 Kan. 748, 758, 176 P.3d 144 (2008). In any event, because Wayman presented no evidence to indicate that Ristow's intoxicated driving could have been foreseen by Accor, the district court did not err by granting summary judgment in favor of Accor on this claim. See *Gardin v. Emporia Hotels, Inc.*, 31 Kan. App. 2d 168, 175, 61 P.3d 732, *rev. denied* 275 Kan.

963 (2003) (summary judgment is appropriate when there is no evidence to indicate the cause of plaintiff's injury was foreseeable).

Affirmed.